Lindell WINN, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–0004–CR–255.

Supreme Court of Indiana.

May 22, 2001.

Susan D. Rayl, Indianapolis, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

Lindell Winn was convicted of rape, a class A felony,[1] criminal deviate conduct, a class A felony,[2] criminal confinement, a class B felony,[3] battery, a class C felony,[4]

---

1. Ind.Code § 35–42–4–1(b).

2. Ind.Code § 35–42–4–2.

3. Ind.Code § 35–42–3–3(1).

4. Ind.Code § 35–42–2–1(a)(3).

and criminal recklessness, a class D felony,[5] and he was sentenced as a habitual offender.[6] In this direct appeal, the defendant claims error arising from: (1) insufficient evidence to support his conviction for criminal confinement as charged; (2) denial of his motion to recuse the trial judge; (3) keeping M.S. in jail pending trial and excluding evidence thereof; (4) admissibility of habitual offender evidence; (5) maximum habitual offender enhancement as manifestly unreasonable; and (6) unbelievable and coerced testimony of the victim.

### 1. Criminal Confinement

■ The defendant contends that the State failed to prove the allegations of the information charging him with criminal confinement. The information charged that: "Lindell Winn, on or about September 25, 1998, did knowingly, while armed with a deadly weapon, that is: rifle, confine [M.S.], without the consent of [M.S.], by laying next to her with a rifle refusing to let her leave." Record at 34. The defendant argues that the evidence shows merely that he lay down beside M.S. while he was armed, but that he did not confine her because, when she got up to go to the bathroom, he asked her where she was going but did not attempt to stop her and fell back asleep. He seeks a judgment of acquittal on the charge of criminal confinement, asserting that, "[b]ecause the State presented no evidence whatsoever that Winn would not allow [M.S.] to leave it failed to produce substantial probative evidence of a material element of criminal confinement as charged." Appellant's Br. at 11.

The State responds by noting evidence that the defendant had attacked M.S. by striking her on the head with a rifle, threatened that he was going to kill both her and her daughter, raped M.S. twice and forced her to perform oral sex, and then, while holding a gun, directed her to lay down next to him, and she complied. The State argues that this evidence establishes the statutory elements of the crime.

The offense of criminal confinement as a class B felony is defined, in pertinent part, as follows:

A person who knowingly or intentionally:

(1) confines another person without the other person's consent; or

(2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;

commits criminal confinement, a class D felony. However, the offense is . . . a Class B felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person.

Ind.Code § 35–42–3–3. As charged here, the offense is based on non-consensual confinement under subsection (1) rather than removal under subsection (2). Following its allegation that the defendant confined M.S. without her consent, the charging information adds "by laying next to her with a rifle refusing to let her leave." Record at 34. The parties do not dispute that the evidence establishes that the defendant directed M.S. to lie down beside him while he was holding a sawed-off rifle, but they disagree as to whether the State was also required to prove that the defendant refused to let M.S. leave.

Without objection from the defense, the trial court instructed the jury that to convict the defendant of criminal confinement under count IV, the State must prove the following elements: (1) the defendant, (2)

---

**5.** Ind.Code § 35–42–2–2(b).

**6.** Ind.Code § 35–50–2–8.

knowingly, (3) confined [M.S.], (4) without her consent. Record at 142.

A charging information must allege the elements of the crime such that the accused is sufficiently apprised of the nature of the charges against him so that he may anticipate the proof and prepare a defense in advance of trial. *See* IND. CONST. art. 1, § 13; Ind.Code § 35–34–1–2; *Smith v. State,* 465 N.E.2d 702, 704 (Ind. 1984). The State is not required to include detailed factual allegations in the charging instrument, though it may choose to do so. *Richardson v. State,* 717 N.E.2d 32, 51 (Ind.1999). Citing *Allen v. State,* 720 N.E.2d 707 (Ind.1999), the defendant seeks relief on grounds of a material variance between the charge and the proof.

The evidence relating to the specific conduct alleged to constitute criminal confinement is sparse. Record 286–88. Prior to the alleged acts of confinement, the defendant struck M.S. in the head twice with the butt of his sawed-off rifle, raped her, forced her to have oral sex with him, and then raped her again. During the episode, he pointed the rifle at M.S.'s daughter and declared that he was going to kill both M.S. and her daughter. During the preceding rapes and criminal deviate conduct, M.S. had not objected or resisted because the defendant was holding a gun and had threatened her. As to the events constituting the alleged confinement, however, there is no direct evidence regarding whether she specifically consented. M.S. testified that, after she engaged in nonconsensual sexual intercourse with her on top of him, the defendant "told me to lay down next to him." Record at 286. She did so. At some later point in time, not described in the record, M.S. got up, and the defendant asked where she was going. She replied that she was going to the bathroom. There is no evidence of any response from him. When she came out of the bathroom, he was snoring, and M.S. and her daughter left, sought medical attention, and called the police. When police arrived at the scene of the crime, the defendant was still sleeping, holding his sawed-off rifle.

We agree with the defendant that the State failed to prove the specific factual allegation that the defendant refused to let [M.S.] leave while he lay next to her with a rifle. While this is an essential difference between the proof and pleading, we find that the specific facts alleged were surplusage and as such could have been "entirely omitted without affecting the sufficiency of the charge against the defendant." *Mitchem v. State,* 685 N.E.2d 671, 676 (Ind.1997). When the factual allegations in the charge are not necessary to the sufficiency of the charge, a greater variance between the allegations and the proof is tolerated before finding the variance material or fatal. *Allen,* 720 N.E.2d at 713. To award relief on the basis of a variance between allegations in the charge and the evidence at trial, the variance must be such as to either have misled the defendant in the preparation and maintenance of his defense with resulting harm or prejudice or leave the defendant vulnerable to double jeopardy in a future criminal proceeding covering the same event, facts, and evidence. *Mitchem,* 685 N.E.2d at 677; *Harrison v. State,* 507 N.E.2d 565, 566 (Ind.1987).

The defendant does not present any argument as to how he was misled in his defense or suffered prejudice as a result of the variance. We also note that defense counsel in closing argument acknowledged that the State had presented evidence of alternate theories supporting the elements of criminal confinement, and, while disputing that the defendant prevented M.S. from leaving after he lay down with her, admitted that "[n]ow if you believe he had

the gun there and he was threatening with it then [criminal confinement is] what he's guilty of but you have to believe that first." Record at 470. Further, under Indiana's double jeopardy jurisprudence, the defendant is similarly not vulnerable to being tried again for the same crime.

■ Having found that the variance is not fatal, we must still determine if the evidence presented is sufficient to support the conviction for criminal confinement. If the surplus "refusing to let her leave" language is omitted, the State charged that the defendant "did knowingly, while armed with a deadly weapon, that is: rifle, confine [M.S.], without the consent of [M.S.], by laying next to her with a rifle." Record at 34. This language is sufficient to charge the defendant with criminal confinement.

In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor assessing the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind.2000).

We find the evidence sufficient to prove criminal confinement as defined by statute, as set forth in the jury instructions, and as alleged in the information charging the non-consensual confinement by laying next to M.S. while armed. Particularly in light of the defendant's conduct preceding the confinement, the evidence is sufficient to create the reasonable inference that M.S.'s obedience to the defendant's command that she lie in bed with him established a reasonable inference that he initially confined her in bed without her consent, notwithstanding her subsequent departure.

The evidence was sufficient to prove criminal confinement.

## 2. Motion to Recuse Judge

■ The defendant claims that the trial court erred by failing to recuse itself upon a showing by the defendant that the court was biased against him. The defendant alleges that the court abandoned its neutrality and assumed an adversarial role against the defendant when it *sua sponte* had the State's chief witness, in this case M.S., incarcerated past her release date to guarantee that she would be available to testify at the defendant's trial. The defendant argues that the trial court's assistance to the State gives rise to a rational inference of bias or prejudice, and the trial court's denial of his motion is clearly erroneous.

■ Under Indiana Criminal Rule 12(B) a defendant requesting a change of judge for bias or prejudice must "timely file an affidavit that the judge has a personal bias or prejudice against the state or defendant." Rule 12(B) further requires the affidavit to "state the facts and the reasons for the belief that such bias or prejudice exists," and be accompanied by "a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true." The court must grant the request "if the historical facts recited in the affidavit support a rational inference of bias or prejudice." *Id.* The ruling on a motion for change of judge is reviewed under the clearly erroneous standard. *Sturgeon v. State*, 719 N.E.2d 1173, 1182 (Ind.1999). Reversal of the judge's decision will require a showing which leaves us with a definite and firm conviction that a mistake has been made. *Id.* at 1182.

In this case, the defendant did not file

an affidavit or an attorney's certificate.[7] Defense trial counsel raised the matter only by oral motion made at the commencement of trial on Monday, November 29, 1999. He informed the judge of his contention that the court's action in keeping M.S. in jail an extra two days to assure her availability to testify "shows a bias on the part of this Court." Record at 182. In support of his request, the defendant called a records clerk at the Marion County jail, who testified that on November 24, 1999 she received a call from an unknown female person in Courtroom 5 who asked that M.S. be held until "her hearing on 11–29 as a witness in this case." Record at 198. The witness stated that she knew the call was from Courtroom 5 because she cross-referenced the incoming phone number. The witness testified that the female caller knew that M.S.'s release date was 11–27, but told the records clerk that the court wanted M.S. held until the hearing. *Id.* The witness agreed that this was the only reason [M.S.] was being held until the day of trial. *Id.* at 199.

The trial court took the motion for recusal under advisement and, after lunch recess, denied it. We note that the Record of Proceedings contains a "Return Order" signed by the judge and filed the same day, November 29, 1999, ordering the Sheriff to return M.S. to the Rockville Correctional Facility, from which she had been transported to the Marion County Jail. Record at 101.[8] The testimony of M.S. took place the next day, November 30, 1999, and we find nothing in the Record to indicate whether, when she appeared and testified, she was still in custody, whether her appearance was voluntary, or whether her attendance was compelled by subpoena.

The State contends that the defendant "can point to nothing in the record that suggests bias on behalf of the court. [The jail clerk's] testimony, viewed in the most favorable light possible to [the defendant], shows only that someone identifying themselves as personnel from Marion Superior Courtroom Five, without the judge's direction or even his knowledge, asked for [M.S.] to be held until trial." Br. of Appellee at 7. The defendant does not deny this characterization of the facts, but argues that, even if the judge did not personally authorize this action, the judge is responsible for the actions of his staff.

We acknowledge that a rational inference may be made that the court's staff would not request the incarceration of a witness without either explicit or standing judicial direction or, because the court staff member assumed based on her knowledge that the judge would approve. We find no rational inference, however, that the trial judge had personal knowledge that extending the presence of M.S. in the Marion County Jail for two days to testify might exceed the date of her scheduled release from the Rockville Correctional Facility, or was otherwise improper. On motion of the prosecutor, the trial

---

7. The State did not oppose the motion either at trial or on appeal on grounds that the defendant failed to comply with the requirements of the Rule.

8. On October 27, the State filed a motion to transport M.S. from the Rockville Correctional Facility to Marion County for the purpose of testifying at the jury trial in this case originally scheduled to begin November 8, 1999. By entry dated October 29, 1999, the court ordered her to be transported to the Marion County Jail "no later than November 5, 1999, and further to the Marion Superior Court, Criminal Division Five, on November 8, 1999 for the purposes of testifying...." Record at 91. On its own motion for court congestion, the court later vacated the original trial date of November 8, 1999, and reset it for November 29, 1999. Record at 97. The trial began on November 29, 1999.

court had ordered the transport of M.S. from the Rockville Correctional Facility to testify.

Upon these facts, assuring the availability of this incarcerated witness for trial does not reasonably suggest any bias or prejudice of the trial judge. We decline to find from the asserted facts a rational inference of personal bias or prejudice on the part of the judge. The defendant's argument does not leave us with a definite and firm conviction that a mistake has been made. *Sturgeon*, 719 N.E.2d at 1182.

### 3. Retaining Witness in Jail and Excluding Evidence

The defendant also contends that the trial court erred by assuming an adversarial role by keeping the State's witness in jail for no reason "but to testify against" the defendant, and by failing to "disclose to the jury what it had done." Appellant's Br. at 14.

 We reject the defendant's claim that the judge assumed an improper adversarial role for the same reasons discussed above with respect to the claim of bias and prejudice.

 As to the claim of excluded evidence, prior to trial, the court granted the State's motion in limine seeking to prohibit the jury from hearing evidence of [M.S.'s] criminal history and incarceration. Record at 104. The State now argues that the defendant failed at trial to make any offer of proof or to otherwise seek relief from the order in limine. In order to preserve an error for appellate review, the excluded evidence must be offered at trial to give the trial court an opportunity to rule on its admissibility at that time. *Miller v. State*, 716 N.E.2d 367, 370 (Ind. 1999). The defendant does not direct us to any offer of proof or other action taken during trial to raise this question, and we find none. The exclusion of the challenged

evidence is therefore not an available issue on appeal.

### 4. Habitual Offender Evidence Admission

 The defendant next contends that the trial court erred during the habitual offender phase of the trial in admitting evidence of two prior misdemeanor convictions and a prior information charging the defendant with being a habitual substance offender.

 The State's information charging that the defendant was a habitual offender alleged that he had accumulated two prior unrelated felony convictions, one for theft as a class D felony, and the other for operating a vehicle while intoxicated as a class D felony. To prove these prior offenses, the State presented State's Exhibits 23 and 24. Each exhibit consisted of a packet of the "Officer's Arrest Report / Book-in Slip," the charging informations, and the order of judgment of conviction. Exhibit 24, supporting the conviction for class D felony operating while intoxicated, included a count charging that defendant was a habitual substance offender, based on two identified additional prior unrelated substance offense convictions. The exhibit also indicated that, except for the class D felony conviction, the other counts were dismissed. At trial, the defendant objected to State's Exhibits 23 and 24 only on grounds of improper foundation. The issue now claimed on appeal was not raised at trial, and the trial court thus had no opportunity to consider the possibilities of redaction, exclusion, or jury admonishment. The defendant may not assert for the first time on appeal grounds for exclusion of evidence not asserted at trial. *Gill v. State*, 730 N.E.2d 709, 711 (Ind.2000); *Taylor v. State*, 710 N.E.2d 921, 923 (Ind. 1999). This claim is forfeited by procedural default.

### 5. Manifestly Unreasonable Sentence Enhancement

■■■ The defendant also contends that the thirty-year habitual offender sentence enhancement of his fifty-year sentence for rape is manifestly unreasonable. Emphasizing that his two prior felony convictions were non-violent class D felonies, he asks that his enhancement be reduced from thirty years to ten years.

■■■ Upon the jury's determination that the defendant was guilty of rape as a class A felony, criminal deviate conduct as a class A felony, criminal confinement as a class B felony, battery as a class C felony, and criminal recklessness as a class D felony, the trial court imposed the maximum sentence for each count but ordered the sentences served concurrent to each other. Because the jury found that the defendant was a habitual criminal offender by reason of having accumulated two prior unrelated felony convictions, the court was required to impose a habitual offender enhancement upon only one of the convictions, and to specify the conviction thus enhanced. *See Greer v. State,* 680 N.E.2d 526, 527 (Ind.1997). In the present case, depending upon whether the enhancement was attached to one of the class A felonies or the class D felony, the trial court could have imposed an enhancement ranging from as little as one and one-half years to thirty years, pursuant to the statute which provides:

> The court shall sentence a person found to be a habitual criminal to an additional fixed term that is not less than the presumptive sentence for the underlying offense nor more than three (3) times the presumptive sentence for the underlying offense. However, the additional

sentence may not exceed thirty (30) years.

Ind.Code 35–50–2–8(e).[9] The trial court chose to attach the habitual offender enhancement to the conviction for rape as a class A felony, thereby further enhancing its maximum fifty-year sentence for rape to eighty years. Because the presumptive sentence for a class A felony is thirty years,[10] the habitual offender enhancement attached to a class A felony requires an enhancement of thirty years.

■■■ The defendant argues that his habitual offender enhancement was the same as would have been given to a serial murderer, and is manifestly unreasonable considering that his two prior felony convictions were class D felonies. The State responds that the enhancement was reasonable particularly in light of the brutality of his offenses against M.S. We note that a jury's habitual offender finding reflects not merely its conclusion that a defendant has been twice previously convicted of unrelated felonies, but also that the two prior convictions together with the current offense lead it to find that the defendant is a habitual criminal. *Seay v. State,* 698 N.E.2d 732, 736 (Ind.1998).

■■■ This Court is authorized to review and revise a sentence authorized by statute when we find the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.Appellate Rule 7(B).[11] To warrant modification of a sentence as manifestly unreasonable, we must find it to be clearly, plainly, and obviously unreasonable. *Thacker v. State,* 709 N.E.2d 3, 10 (Ind.1999); *Brown v. State,* 698 N.E.2d 779, 783–84 (Ind.1998); *Prowell v. State,* 687 N.E.2d 563, 568 (Ind.1997).

---

**9.** The presumptive sentence for a class D felony is one and one-half years. Ind.Code § 35–50–2–7.

**10.** Ind.Code § 35–50–2–4.

**11.** For appeals initiated after January 1, 2001, this provision is Appellate Rule 7(B).

In sentencing the defendant, the trial court found that he had a history of non-violent criminal activity consisting of theft in 1998, operating while intoxicated as a D felony in 1995, operating while intoxicated as a misdemeanor in 1994, operating while intoxicated in 1991, and several incidents of driving while suspended prior to 1990. The court found that, with respect to the count charging criminal recklessness, the defendant pointed a rifle at M.S.'s child, who was less than 12 years of age. The court summarized the criminal episode as follows: "You, while armed with a deadly weapon, confronted this lady, and struck her, and threatened her and required her to forcibly submit to sexual activities, More than one." Record at 532–33. As mitigating circumstances, the court found that the defendant had earned a G.E.D., that he had served in the U.S. Army during Operation Desert Storm, and that his incarceration would be hardship on his family. Record at 532.

Considering the nature of the offenses and the defendant's character as reflected by the trial court's sentencing findings, the court's decision to impose the maximum fifty-year sentences for rape and criminal deviate conduct, and the range of habitual offender enhancements available, we conclude that imposing the maximum habitual enhancement by attaching it to one of the class A felony convictions was clearly and plainly unreasonable. We agree with the defendant that the enhancement should be ten years. This may be implemented by attaching the enhancement to either criminal confinement as a class B felony or battery as a class C felony.

### 6. Inherently Improbable Witness Testimony

█ As a separate issue, the defendant contends that all his convictions should be reversed because the testimony of the sole eyewitness, M.S., was both coerced and unbelievable. His claim of coercion arises from his allegation that M.S. was held in jail past her release date.

█ To support his claim that M.S.'s testimony was inherently improbable, the defendant alleges that her conduct during the episode was unlikely, that her testimony was not credible, and that there were inconsistencies between her trial and deposition testimony. The State responds that various parts of M.S.'s testimony were corroborated with evidence of injuries to her scalp consistent with being hit, injuries to her hands consistent with defending herself, semen on her thigh, and the police officers' discovery of the defendant sleeping in M.S.'s bed cradling a gun. While there are inconsistencies in M.S.'s testimony, none are sufficient to render her testimony as a whole inherently improbable. We further find nothing to support the defendant's speculation that M.S.'s testimony was coerced by the possibility that she was kept incarcerated beyond her release date. We find no error on this issue.

### Conclusion

We affirm the judgment except for the length of the habitual offender enhancement, and remand to the trial court solely for the following purpose: the trial court shall sever the thirty-year habitual offender enhancement from the sentence for rape as a class A felony and shall impose a ten-year habitual offender enhancement by attaching it to either the sentence for criminal confinement as a class B felony or to the sentence for battery as a class C felony.

SHEPARD, C.J., and BOEHM, and RUCKER, JJ., concur. SULLIVAN, J. concurs except as to Part 5, as to which he concurs in result.