Larry **DORN,** Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A05–0404–CR–193.

Court of Appeals of Indiana.

Dec. 21, 2004.

Transfer Denied Feb. 18, 2005.

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Following a bench trial, Larry Dorn was convicted of Promoting Prostitution,[1] a class C felony, Patronizing a Prostitute,[2] a class A misdemeanor, and two counts of Intimidation,[3] both as class D felonies. Dorn appeals only one of those convictions, challenging the sufficiency of the evidence supporting his conviction of promoting prostitution.

We affirm.

The facts favorable to the conviction are that on September 11, 2003, the Indianapolis Police Department was conducting a reverse prostitution sting at the corner of Harlan and Prospect in Indianapolis. Officers Lynette Vega and Pamela Lee took turns posing as prostitutes, while other undercover officers observed and recorded the women's activities and conversations. When Officer Vega was on the street, Dorn walked by and initiated a conversation with her. The two proceeded to Dorn's car, which was parked nearby. Dorn repeatedly asked Officer Vega to get into his car, but she consistently refused to do so. Dorn told Vega she was too beautiful to be "on the street." *Transcript* at 11.

---

1. Ind.Code Ann. § 35–45–4–4 (West, PREMISE through 2004 2nd Regular Sess.).

2. I.C. § 35–45–4–3 (West, PREMISE through 2004 2nd Regular Sess.).

3. I.C. § 35–45–2–1 (West, PREMISE through 2004 2nd Regular Sess.).

He told her he could take her someplace where she could make more money, and would be protected from robbery, rape, and murder. Dorn tried to convince Officer Vega to go with him by car to the corner of 10th Street and Rural Avenue. She refused. Dorn began talking about the two of them starting an escort service, which he claimed would make her more money. He told her people would leave her alone if they saw her riding in a car with him. At some point, Dorn looked up and saw someone in the apartment that Officer Vega had told him was hers.[4] He asked Officer Vega who was in her apartment, and she responded her girlfriend was there. Shortly after that, the conversation ended and Dorn left.

Later that day, Officer Lee took Vega's place on the street. Dorn drove near Officer Lee and struck up a conversation. Dorn talked to Officer Lee for "quite awhile", *Id.* at 14, about starting an escort service. He told Officer Lee that his wife was one of his "hos", which Officer Lee understood to mean "prostitutes." *Id.* at 16. He proposed a sixty-forty split, with Lee receiving sixty percent and Dorn receiving forty percent. For his forty-percent share, Dorn would protect Lee, schedule appointments, transport Lee to the appointments, and then take her home again. Throughout their conversation, Dorn tried to get Officer Lee to enter his car, but she continually refused to do so. Eventually, Dorn asked how much she wanted for "straight sex", and she told him it would cost $30.00. *Id.* at 55. By this time, Dorn was frustrated with Officer Lee's refusal to get into the car, and he began screaming at her. Finally, he threatened, "how bout I give you your life for your pussy?" *Id.* At this point, Officer

Lee signaled nearby officers, who moved in and arrested Dorn.

Dorn was taken to a nearby apartment for processing. He became belligerent and, when he saw Officer Vega in the apartment, he told her she was "done" when she came back out on the street. *Id.* at 57. He stated, "you don't know who I am or what I'm capable of, just look at my record." *Id.* Dorn was charged and convicted as set out above following a bench trial.

■ Dorn challenges the sufficiency of the evidence with respect to only one of the convictions—promoting prostitution. Therefore, we will confine our discussion to the evidence as it relates to that conviction. Essentially, his challenge includes two arguments. First, he contends the tapes of the encounter with Officer Lee are for the most part unintelligible and thus do not support the conviction. Second, he claims there was nothing in his remarks to indicate he was proposing an illegal—as opposed to legal—escort service.

■ When considering a challenge to the sufficiency of evidence, we neither reweigh evidence nor reassess witness credibility. *Winn v. State,* 748 N.E.2d 352 (Ind.2001). Instead, we consider the evidence favorable to the conviction, together with all reasonable inferences flowing therefrom. *Id.* We will affirm if there is probative evidence from which to find guilt beyond a reasonable doubt. *Id.*

We agree with Dorn that the relatively poor quality of the audiotape and videotape recordings of Officer Lee's encounter with Dorn renders them, standing alone, unconvincing in proving guilt. Because of the angle and distance between the camera

---

**4.** In fact, there were several police officers stationed in the apartment monitoring and recording Officer Vega's activities.

and Officers Lee's location, Officer Lee is barely visible and Dorn is not visible at all. The audio component of the videotape is of such poor quality that only the officer's comments are intelligible, and only a small portion of those comments can be understood. The quality of the audiotape is better, but not consistently good. Unfortunately, at the time of the events in question, a man was working with a gas-engine leaf blower just a few feet from where Officer Lee was standing and the noise from the blower frequently obscured what Dorn was saying. In fact, we would agree that a conviction based solely upon the tapes would not be sustainable. Such, however, is not the case.

■ The testimony of the person a defendant sought to entice is alone sufficient to sustain a conviction for promoting prostitution. *See Gibson v. State,* 514 N.E.2d 318 (Ind.Ct.App.1987), *trans. denied.* In this case, Officer Lee testified thoroughly about the substance of her conversation with Dorn. We note that to the extent they were intelligible, the audiotape and videotape corroborated Officer Lee's description of the encounter. Therefore, we proceed to the second element of Dorn's challenge, i.e., that even accepting Officer Lee's testimony as true, the State did not establish the elements of promoting prostitution.

I.C. § 35–45–4–4(1) provides, "[a] person who ... knowingly or intentionally entices or compels another person to become a prostitute ... commits promoting prostitution, a Class C felony." Thus, to convict Dorn under this statute, the State was required to prove Dorn knowingly enticed Officer Lee to work for him as a prostitute. To carry that burden, the State presented evidence that Dorn proposed to Officer Lee that she could work as a "ho" for his escort service and they would split the proceeds, with Dorn booking clients, taking Officer Lee to and from appointments, and providing protection. Dorn contends this evidence does not prove the elements of the offense beyond a reasonable doubt. In particular, he claims the evidence is consistent with the view that his proposal to Officer Lee was for a legitimate escort service, i.e., one not involving prostitution. Alternatively, he argues his comments concerning an escort service were merely empty boasts intended to "impress a woman to get sex." *Appellant's Appendix* at 10. Essentially, he challenges the inferences the court drew from the evidence. Therefore, we are called upon to decide whether Officer Lee's testimony permits a reasonable inference that Dorn's business proposal to her amounted to a solicitation to work as a prostitute with Dorn acting as her pimp, i.e., "a man who solicits clients for a prostitute." *Merriam–Webster OnlineDictionary* (2004), *available at* http://www.m-w.com/cgi-bin/dictionary.

Dorn's argument is generally based upon the contention that his comments were vague and did not state with sufficient explicitness that the proposed business collaboration would require Officer Lee to prostitute herself. We disagree and conclude that, viewed as a whole and understood in context, Dorn's comments proposed just that. First, he claimed that his wife worked for him as a "ho" and proposed that Officer Lee could do likewise. *Transcript* at 54. Dorn claims upon appeal that "ho" is a term susceptible to several meanings, some of which are derogatory, but "sometimes it is ... used to compliment a woman's ability to stand up for herself." *Appellant's Brief* at 6–7. That may be the case, but it is also a street-slang synonym for "prostitute." *See Urban Dictionary* (2004), *available at* http://www.urbandictionary.com/define.php?term=ho & r=f. Context and grammatical usage strongly suggests Dorn

was not complimenting Officer Lee for her independent spirit. We note, for instance, that one does not work for another in a position whose job description is "standing up for herself". *Appellant's Brief* at 6–7. Yet, Dorn told Officer Lee that his wife worked as a "ho" for him. It may reasonably be inferred that the meaning intended in Dorn's conversation with Officer Lee, as illuminated by his reference to his wife (among other contextual indicators—some of them quite graphic) was that Officer Lee would work as a prostitute for him. Second, Dorn's entire conversation with Officer Lee was focused on the topic of sex and laced with frank sexual language. This would seem to settle the meaning of "ho" in this context. These factors permit a reasonable inference that Dorn sought to convince Officer Lee to work for him as a prostitute.

Finally, we reject Dorn's suggestion that the offense of promoting prostitution requires a corpus delicti in the form of "some level of completed act." *Appellant's Brief* at 13. He suggests that such might include, in this particular context, either an agreement to establish a business relationship, or an act of prostitution. He contends something was required beyond "just idle chatter about how it would or could work." *Id.* Our review of the statute creating and defining the offense reveals no such requirement. I.C. § 35–45–4–4 speaks only of "enticing." "Entice" means "to attract artfully or adroitly or by arousing hope or desire." *Merriam–Webster Online Dictionary, available at* http://www.m-w.com/cgi-bin/dictionary?book=Dictionary & va=entice. The evidence permits a reasonable inference that Dorn sought to lure Officer Lee into prostitution by offering to perform booking, transportation, and protection services for her, in exchange for a percentage of her fees. Such constitutes "enticing" within the meaning of I.C. § 35–45–4–4 and is

sufficient to support a conviction of promoting prostitution. Thus, there was probative evidence from which to find that Dorn was guilty beyond a reasonable doubt of promoting prostitution.

Judgment affirmed.

DARDEN, J., and MATHIAS, J., concur.