**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEREMY K. NIX**
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEPHEN W. MCINTYRE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 35A02-1402-CR-82 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HUNTINGTON SUPERIOR COURT
The Honorable Kenton W. Kiracofe, Special Judge
Cause No. 35D01-1304-FD-78

**August 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Stephen W. McIntyre appeals his conviction for theft, as a Class D felony, following a jury trial. McIntyre raises the following two issues for our review:

1. Whether the trial court abused its discretion when it denied his motion for a mistrial; and

2. Whether the State presented sufficient evidence to support his conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In January and February of 2013, McIntyre worked as a jail officer for the Huntington County Sheriff's Department. At that time, Deputy David McVoy began a "pop fund" at the Sheriff's station to raise money to help pay the ongoing costs of care and equipment for Zeek, a canine unit. Tr. at 176. Deputy McVoy stocked an office refrigerator with cans of soda and placed "an old Folgers can" on top of the refrigerator. Id. at 179. Anyone who removed a soda would place fifty cents in the coffee can.

Deputy McVoy purchased the soda with his own money and regularly stocked the refrigerator. He also placed loose coins and dollar bills in the coffee can so participants could make change as needed. This money was also personally provided by Deputy McVoy.

Deputy McVoy was "the only one [who] touched the money" and neither he nor Sheriff Terry Stoffel "authorize[d] anyone else to remove money from the Folgers can other than for the purpose of making change." Id. at 181. Deputy McVoy checked the contents of the coffee can at least once per day. He would remove any bills over $5

"fairly quick," but he would "usually leave . . . three or four or five ones in there just in case somebody needed to make change . . . ." Id. at 211. When he would remove the coins, the total dollar amount in coinage was typically about sixty to seventy dollars. Aside from small purchases for Zeek that he could make immediately, Deputy McVoy submitted all money removed from the coffee can to the Sheriff Department's "matron," the Department's bookkeeper, who put the money in "the canine fund." Id. at 176, 357.

In March, Sheriff Stoffel became suspicious that McIntyre was removing money from the pop fund. Sheriff Stoffel contacted the Indiana State Police, and state officers placed video surveillance equipment into the squad room where the coffee can was located. State officers further placed investigative funds into the coffee can. On at least eight separate occasions, state officers recorded McIntyre approaching the coffee can and removing money, which he followed by also taking a soda, without placing any money of his own in the coffee can. Id. at 303-11. On three of those occasions, McIntyre "act[ed] like he [was] throw[ing] change into the container." Id. at 305. On a fourth occasion, another department employee walked into the room with McIntyre, and he responded by trying to hide the money he had removed from the can behind his back.

On another occasion subsequent to the recorded events, a state investigator counted thirty-seven dollars in bills in the coffee can before McIntyre entered the room, observed McIntyre enter the room, and, sometime later, then counted twenty-four dollars in bills in the coffee can. The next day, that same investigator counted twenty-five dollars in bills in the can, observed McIntyre enter the room, and, sometime later, then

3

counted eighteen dollars in bills in the can. Thereafter, Sheriff Stoffel arrested McIntyre and fired him.

On April 19, the State charged McIntyre with theft, as a Class D felony. At his ensuing jury trial, Sheriff Stoffel testified as follows:

THE STATE: [D]escribe what peaked your interest? What set your senses on fire?

* * *

WITNESS: From the beginning . . . there were multiple things that added up to where we are at today. I would go in there and I would see . . . that there would be a big wad of money, dollar bills . . . in that and then I would go back later in a day or in an hour or two later and I would notice that dollar bills were missing. It was a lot smaller than it was.

THE STATE: Okay.

WITNESS: And Officer McVoy works at night and I knew he wasn't coming in and taking it so I kind of wondered . . . . what was going on . . . .

* * *

WITNESS: So . . . there was a particular jail officer [who] was making frequent trips down the hallway past my office going into that room and coming back with pop.

THE STATE: Why was that unusual? I mean, that's part of the entire Sheriff's Department, right?

WITNESS: Yes, it is. But I'm talking . . . once every hour and ten (10) or fifteen (15) minutes he was coming down that hallway. And I didn't really like that very much so I actually confronted him.

* * *

WITNESS: I actually confronted Steve McIntyre in the hallway that he's got to go by to get to the pop fund and as he stood there and talked to me three quarters fell out of his hand.

THE STATE: And this was just after he came out . . . .

4

WITNESS:    After he came out of the break room, yea.

THE STATE:       Okay.

WITNESS:    So that in itself was suspicious to me because pop is fifty cents.

THE STATE:       Okay.

WITNESS:    So I wouldn't know why he would have three quarters fall on the ground. Two would have been fine. I wouldn't have thought as much about that or none but three (3) quarters fell on the floor. And that was another indicator that I didn't like what was going on and with the prior history that I had with Mr. McIntyre . . . .

Id. at 358-60 (emphasis added). McIntyre's counsel promptly objected at this point.

Following a sidebar, the State continued its examination of Sheriff Stoffel:

THE STATE:       Okay . . . you were telling the jury the things that peaked your interest on this matter.

WITNESS:    [W]e had some money that was missing and shrinking. We had the quarters falling in the hallway. And then accompanied with what I knew, the history that I had had with Steve McIntyre before with his deception and lying.

Id. at 361 (emphasis added). McIntyre's counsel again promptly objected and requested a mistrial. Following a discussion outside the presence of the jury, the trial court sustained the objection but denied the request for a mistrial. The court then admonished the jury as follows: "The Court is going to admonish you that you are not to consider any statements made by this witness after he said he had a history with the Defendant. You may not consider those statements in any way." Id. at 388.

The jury found McIntyre guilty as charged, and the court entered its judgment and sentence accordingly. This appeal ensued.

5

## DISCUSSION AND DECISION

### Issue One: Mistrial

On appeal, McIntyre first asserts that the trial court abused its discretion when it denied his motion for a mistrial. To succeed on appeal from the denial of a motion for a mistrial, a defendant "must demonstrate that the conduct complained of was both error and had a probable persuasive effect on the jury's decision." Booher v. State, 773 N.E.2d 814, 820 (Ind. 2002). The trial court's decision to grant or deny a mistrial "is reviewed only for abuse of discretion." Knapp v. State, 9 N.E.3d 1274, 1283 (Ind. 2014). Mistrial is "an extreme remedy in a criminal case which should be granted only when nothing else can rectify a situation." Id. at 1284 (quotations omitted). Our deferential review of decisions to grant or deny a mistrial reflects that the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. Id. (quotation omitted). "A prompt admonishment advising the jury to disregard the improper testimony is usually enough to avoid a mistrial." TRW Vehicle Safety Sys. Inc. v. Moore, 936 N.E.2d 201, 213 (Ind. 2010).

The trial court did not abuse its discretion when it denied McIntyre's motion for a mistrial. At the time Sheriff Stoffel made his inadmissible statement, the jury had before it eight video recorded instances of McIntyre approaching the coffee can and removing money and a soda without placing any money of his own in the coffee can. Tr. at 303-11. On three of those occasions, McIntyre "act[ed] like he [was] throw[ing] change into the container." Id. at 305. On a fourth occasion, another department employee walked into the room with McIntyre and he responded with furtive gestures. The jury also had before

6

it the testimony of a state investigator who stated that, on two occasions, he counted less money in the coffee can after McIntyre had passed through the room than was in the can before McIntyre had entered.

The trial court was within its discretion to conclude that the probable persuasive effect of Sheriff Stoffel's statement was minor. Moreover, the trial court admonished the jury to disregard Sheriff Stoffel's inadmissible statement. The trial court's admonishment, on these facts, was enough to cure the error. We affirm the trial court's denial of McIntyre's motion for a mistrial.

### Issue Two: The State's Evidence

McIntyre also asserts that the State failed to present sufficient evidence that he committed theft, as a Class D felony. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

McIntyre's argument on appeal is not that the State's evidence fails to demonstrate each element of theft, as a Class D felony. That is, McIntyre concedes that the State demonstrated that he knowingly or intentionally exerted unauthorized control over the property of another person, with the intent to deprive the other person of any part of its value or use. Ind. Code § 35-43-4-2(a). McIntyre's exclusive argument on appeal is that

7

the charging information alleges he stole the money of Deputy McVoy, whereas the State's evidence demonstrates that he stole the money of the Huntington County Sheriff's Department.

While McIntyre styles his argument as challenging the sufficiency of the State's evidence, in fact his argument is that the State's evidence was a fatal variance from the facts alleged in the charging information. "A variance is an essential difference between proof and pleading." Allen v. State, 720 N.E.2d 707, 713 (Ind. 1999). Not all variances are fatal, however:

> The test to determine whether a variance between the proof at trial and a charging information or indictment is fatal is as follows:
>
> > (1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;
> >
> > (2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

Mitchem v. State, 685 N.E.2d 671, 677 (Ind. 1997). Further, "[t]he State is not required to include detailed factual allegations in the charging instrument," and, "[w]hen the factual allegations in the charge are not necessary to the sufficiency of the charge, a greater variance between the allegations and the proof is tolerated before finding the variance material or fatal." Winn v. State, 748 N.E.2d 352, 356 (Ind. 2001).

But "[i]n order for this Court to consider this issue on appeal, the defendant must have properly objected to the jury instruction," which specified that the State was required to prove all of the material allegations contained in the charging information,

8

"and have proffered a written jury instruction which would correct the error." Mitchem, 685 N.E.2d at 674. "If the defendant failed to tender an instruction on the issue, the defendant cannot now complain of an incomplete or omitted instruction." Id.

McIntyre did not object to the trial court's jury instructions on this issue, and he did not proffer an instruction that would have corrected this alleged error. Moreover, and perhaps because he has mistakenly styled his variance argument as a sufficiency argument, McIntyre does not apply the facts of this case to our case law describing when a variance might be fatal. As such, McIntyre's argument on appeal is not supported by cogent reasoning. For all of these reasons, McIntyre's argument is not subject to appellate review. Ind. Appellate Rule 46(A)(8)(a); Mitchem, 685 N.E.2d at 674-75.

Waiver notwithstanding, we agree with the State that, to support a charge of theft, "the well established rule [is] that it is not necessary to prove absolute title or ownership in the alleged owner, but sufficient if the evidence shows that the alleged owner to be properly in possession as a bailee, agent, trustee, executor, or administrator." Raines v. State, 514 N.E.2d 298, 299 (Ind. 1987). The evidence at trial unquestionably demonstrates that Deputy McVoy meets this test on behalf of the Sheriff's Department, and we will not consider McIntyre's argument that Deputy McVoy does not meet this test because the money McIntyre stole happened to be planted for investigative purposes. Thus, McIntyre's argument on appeal is unpersuasive, and we affirm his conviction for theft, as a Class D felony.

Affirmed.

BAILEY, J., and PYLE, J., concur.