**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 21 2014, 10:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRANDON E. MURPHY**
Public Defender's Office
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARRYL J. GOODWIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A05-1309-CR-468 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No. 18C01-1302-FC-16

**August 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

A jury found Darryl Goodwin guilty of two counts stalking, Class C felonies, and residential entry, a Class D felony, and he received an aggregate sentence of twelve years in the Indiana Department of Correction. Goodwin appeals, raising the following issues for our review: (1) whether there was sufficient evidence presented to support one of Goodwin's stalking convictions, which was based upon a charge that he stalked his victim while having actual knowledge of a protective order issued against him; (2) whether Goodwin was improperly sentenced for two counts of stalking that constituted a single episode of criminal conduct; and (3) whether Goodwin's sentence is inappropriate in light of the nature of his offenses and his character. Concluding there was sufficient evidence to support Goodwin's convictions and that there was no material variance between proof and pleading, that Goodwin's offenses of stalking were not a single episode of criminal conduct, and that his sentence was not inappropriate, we affirm.

## Facts and Procedural History

Goodwin and Heather Utsler dated for approximately seven years until their relationship ended in June of 2012. That month, Utsler obtained a protective order against Goodwin. That protective order remained enforceable against Goodwin until June 15, 2014.

On January 17, 2013, and in the early hours of January 18, Goodwin began sending angry text messages to Utsler. She returned home from a friend's house at approximately 9:45 p.m. on January 18. When she entered her home, she heard knocking at the back door

and discovered Goodwin standing outside. Utsler refused to open the door and reminded Goodwin of the restraining order against him. Utsler became scared that Goodwin would force his way inside, so she ran out the front door and across the street to a neighbor's house. As Utsler ran to the front door, Goodwin kicked in the back door and entered Utsler's home.

Utsler contacted the police, and an officer arrived shortly after her call. Once a second officer arrived, Utsler was escorted back to her home. Goodwin was no longer inside, but the inside of the home was in disarray and Utsler's television was broken. Utsler's phone showed a number of text messages from Goodwin and several missed calls from a blocked number.

The following day, Goodwin continued sending threatening text messages to Utsler, and he also attempted to call her cell phone numerous times. Over the course of the next several days, Goodwin continued to bombard Utsler with threatening text messages and voicemail messages. Finally, Utsler could take no more, and on January 23, 2013, she met with Detective Jami Brown of the Muncie City Police Department. Detective Brown took a statement from Utsler and took pictures of 597 text messages sent from Goodwin between January 17 and January 23. That night, Utsler went to work and received a text message from Goodwin stating that he had watched her walk into her workplace.

Over the next week, Goodwin persisted in sending threatening text messages and leaving voicemail messages to Utsler. In several of those messages, Goodwin threatened to kill Utsler and threatened to kill other men Goodwin believed Utsler may have been dating. In one particularly loathsome message, Goodwin threatened Utsler:

You gonna keep ignoring me like that, for real Heather?  Now I really don't give a fuck about you, and I promise you that.  I don't give a fuck about you, and when I see you out in the streets, I'm gutting yo motha fucking ass like a fish and watching you swim in your own motha fucking blood and watch your motha fucking eyes get dead . . . I'm just gonna walk away and let you fucking die.  I swear to God.  Watch what I say.  I'm gutting you like a fish ho.

Transcript at 126-27.[1]  On January 30, Utsler again went to the police, and Detective Brown recorded a phone conversation between Goodwin and Utsler in which Utsler told Goodwin she had a protective order against him and begged him to leave her alone.

On February 1, 2013, the State charged Goodwin with Count 1:  stalking, a Class C felony, between January 18 and February 1, 2013; Count 2:  residential entry, a Class D felony; and Count 3:  intimidation, a Class D felony.  Goodwin was arrested on February 4, 2013, having last contacted Utsler on February 2.

One month after his arrest, Goodwin began contacting Utsler from the Jay County Jail.  Utsler answered a phone call from Goodwin, not knowing who may be calling her from the Jay County Jail, and Goodwin informed her that he would be sending her letters from jail.  Goodwin sent Utsler four letters from jail.  Goodwin referenced a trip to King's Island that Utsler had recently taken with a male friend, and he threatened to fight her friend when he got out of jail.  He also expressed anger about Utsler potentially testifying against him.  Utsler was scared by these letters and did not respond to any of Goodwin's attempts to contact her.

---

[1] Goodwin sent Utsler literally hundreds of text messages and voicemails in the two-week period relevant to Count 1, many of which were threatening and violent in substance.  We avoid quoting these numerous messages at length and have, instead, chosen this particular message, which we believe adequately demonstrates the heinous nature of Goodwin's communications to Utsler.

On June 11, 2013, the State amended the charging information to include Count 4: stalking, a Class C felony, between March 2013 and May 2013. On July 29, 2013, the trial court granted the State's motion to dismiss Count 3 from the charging information. A jury trial commenced on July 31, 2013. At trial, the State presented evidence that Goodwin sent Utsler over eight hundred text messages between January 18 and February 2, 2013, and Utsler estimated that Goodwin had attempted to call her nearly a thousand times during that period. Goodwin was found guilty of all three counts in the amended charged information.

The trial court sentenced Goodwin to six years for each count of stalking (Counts 1 and 4), to be served consecutively, and sentenced him to two years for residential entry, to be served concurrently with the sentences for Counts 1 and 4. Thus, Goodwin received an aggregate twelve years executed in the Department of Correction. Goodwin now brings this appeal. Additional facts will be provided as needed.

Discussion and Decision

I. Sufficiency and Variance

First, Goodwin argues the State failed to present sufficient evidence to support his conviction for stalking, a Class C felony, under Count 4. Count 4 provides:

> The undersigned says at diverse times between March 2013 and May 2013 in Delaware County, State of Indiana, [Goodwin] did then and there stalk [Utsler] while a protective or judicial order under IC 34-26-2, or IC 34-4-5.1 had been issued to protect [Utsler] from [Goodwin] and [Goodwin] had actual notice of said order contrary to the form of the statutes in such cases made and provided by I.C. 35-45-10-5(a) and I.C. 35-45-10-5(b)(2) . . . .

Appellant's Appendix at 39. Goodwin points out that the protective order against him was actually issued under Indiana Code chapter 34-26-5, not under Indiana Code chapter 34-26-2 or 34-4-5.1 as is indicated in the charging information. Notably, Goodwin does not dispute that he stalked Utsler, that there was a protective order issued against him, and that he had actual knowledge of the protective order's existence. Thus, as the State points out, Goodwin's argument is less an argument of insufficient evidence to prove the crime alleged under Indiana Code section 35-45-10-5(b)(2) and more a claim of a material variance between the charging information and evidence at trial.

A charging information must allege the elements of a crime such that the accused is sufficiently on notice as to the nature of the charge against him and so that he may anticipate the proof and prepare a proper defense in advance of trial. Winn v. State, 748 N.E.2d 352, 356 (Ind. 2001); Ind. Const. art. 1, § 13. A "variance" is a difference between the pleading and proof at trial. Allen v. State, 720 N.E.2d 707, 713 (Ind. 1999). However, not all variances are material—or "fatal"—and thus not all variances require reversal. Id. For a defendant to be entitled to relief based on a variance between the charge and evidence at trial, "the variance must be such as to either have misled the defendant in the preparation and maintenance of his defense with resulting harm or prejudice or leave the defendant vulnerable to double jeopardy in a future criminal proceeding covering the same event, facts, and evidence." Winn, 748 N.E.2d at 356.

The statute under which Goodwin was charged in Count 4 reads:

"(b) [Stalking] is a Class C felony if at least one (1) of the following applies:
***

> (2) A protective order to prevent domestic or family violence, a no contact order, or other judicial order under any of the following statutes has been issued by the court to protect the same victim or victims from the person and the person has been given actual notice of the order:
>
> ***
>
> (D) IC 34-26-5 or IC 34-26-2 and IC 34-4-5.1 before their repeal (protective order to prevent abuse).

Ind. Code § 35-45-10-5(b)(2)(D) (2013). Count 4 notes this statute as the basis for the charge and references only "IC 34-26-2 and IC 34-4-5.1"—the repealed statutes—without referencing "IC 34-26-5." It is true that the State failed to submit evidence that a protective order was issued under either Indiana Code chapter 34-26-2 or 34-4-5.1, and the protective order at issue in this case was actually issued under the current statute: Indiana Code chapter 34-26-5. However, all three of these chapters of the code were (or are) in force for the same reason: to facilitate the issuance of protective orders for the prevention of domestic or family violence.

Despite the State's inattention to detail, Count 4 did correctly cite the overarching code section, and the State's probable cause affidavit identified the relevant protective order (and the cause number under which it was issued) and specifically stated that the letters sent from Goodwin were in violation of that protective order. It is relatively clear from the charging information that Goodwin was being charged with stalking Utsler in contravention of a protective order issued to prevent domestic or family violence. To demonstrate the existence of a material variance, Goodwin must show that the charging information misled him in his preparation for trial. He has failed to meet that burden.

## II. Episode of Criminal Conduct

Next, Goodwin claims his crimes of stalking constitute a single episode of criminal conduct. Therefore, according to Goodwin, the trial court abused its discretion by imposing consecutive sentences that resulted in an aggregate sentence greater than the advisory sentence for a Class B felony.

"[E]xcept for crimes of violence, the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." Ind. Code 35-50-1-2(c). "'[E]pisode of criminal conduct' means offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b). This court has held that "[s]eparate offenses are not part of a single episode of criminal conduct when a full account of each crime can be given without referring to the other offenses." Reeves v. State, 953 N.E.2d 665, 671 (Ind. Ct. App. 2011) (quotation marks omitted), trans. denied.

Count 1 alleged that Goodwin stalked Utsler between January 18 and February 1, 2013, and Count 4 alleged that Goodwin stalked Utsler between March 2013 and May 2013. Goodwin asserts his two counts of stalking are actually a single episode of criminal conduct. He bases this argument chiefly on the premise that the crime of stalking necessarily occurs over a period of time and is the culmination of a series of acts performed by the stalker. In Goodwin's view, his two stalking counts actually describe one continuing episode of stalking. He argues he should have been charged with one count of stalking between January and May 2013 and that the State's decision to charge Goodwin with two

8

counts for distinct periods of time is merely a clever attempt to convict him of multiple felonies.

As a general matter, we agree that continuous stalking over a period of time could properly be considered a single episode of criminal conduct. That said, we are not convinced that Goodwin's stalking convictions arise out of a single episode of criminal conduct. Most important to our conclusion is that an entire month passed between Goodwin's last contact with Utsler prior to his arrest until he contacted Utsler from jail. Goodwin's acts of stalking were disjointed, and we believe a full account of each instance of stalking can be given without reference to the other. Therefore, the trial court's consecutive sentencing, resulting in an aggregate sentence of twelve years, was not an abuse of discretion.

### III. Appropriateness of Sentence

Last, Goodwin contends his twelve year sentence is inappropriate in light of the nature of his offenses and his character. Indiana Appellate Rule 7(B) gives appellate courts the authority to revise a defendant's sentence if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our inquiry focuses on the defendant's aggregate sentence, rather than the number of counts, length of the sentence on any individual count, or whether any sentences are concurrent or consecutive. Brown v. State, 10 N.E.3d 1, 8 (Ind. 2014). It is the defendant's burden to persuade the reviewing court that the sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

As to the nature of Goodwin's offenses, we find his acts of stalking and residential entry to be worse than the typical offenses of their kind. See Johnson v. State, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013) (stating a factor in determining if a sentence is inappropriate is whether the offense in question is more or less egregious than the "typical" offense envisioned by the legislature when it set the advisory sentence). Goodwin's entry of Utsler's residence occurred while she was home and after he had begun sending her threatening text messages. He kicked in Utsler's door and proceeded to trash her home and destroy her television, scaring the wits out of Utsler in the process. As to Goodwin's acts of stalking, Goodwin sent Utsler over eight hundred text messages and Utsler estimated that Goodwin attempted to call her nearly one thousand times; these contacts occurred over a mere two-week period. In addition to the sheer volume of attempted contacts, the substance of many of Goodwin's messages was exceedingly threatening. What is more, Goodwin was not deterred even by his arrest for these acts. Goodwin sent several letters to Utsler from jail, causing Utsler to fear giving testimony against Goodwin at trial. In sum, the nature of Goodwin's offenses do not warrant a reduction in his sentence.

Furthermore, we do not believe Goodwin's character renders his sentence inappropriate. As the State points out, Goodwin has a criminal history both as a juvenile and an adult. See id. at 857 (stating criminal history is a relevant factor in evaluating a defendant's character). Goodwin's juvenile history includes adjudications for burglary, visiting a common nuisance, and resisting law enforcement. As an adult, Goodwin has been convicted of battery resulting in bodily injury, a Class A misdemeanor, and

harassment, a Class B misdemeanor, and Utsler was the victim in Goodwin's harassment case. In addition, Goodwin has a number of other pending cases, which include two separate misdemeanor charges for domestic battery. Goodwin's criminal history does not reflect well upon his character, and his more recent issues, involving harassment of Utsler and alleged instances of domestic violence, are similar in nature to the crimes at issue in this case. See Bryant v. State, 841 N.E.2d 1154, 1156 (Ind. 2006)) (stating the weight of an individual's criminal history is "measured by the number of prior convictions and their gravity, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on a defendant's culpability.").

Goodwin's argument for a reduced sentence relies primarily on the fact that he is relatively young (25 years old) and has not been convicted of a felony in his adult life. We do not believe that these facts overcome the egregiousness of Goodwin's offenses or his criminal history. In sum, Goodwin has not met his burden of demonstrating that his sentence is inappropriate in light of the nature of his offenses and his character.

Conclusion

Concluding there was sufficient evidence to support Goodwin's convictions and no material variance existed between proof and pleading, that Goodwin's offenses of stalking were not a single episode of criminal conduct and the trial court did not abuse its discretion in order consecutive sentences totaling twelve years, and that his sentence was not inappropriate, we affirm.

Affirmed.

RILEY, J., and BRADFORD, J., concur.