Alonzo ALLEN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9801–CR–25.

Supreme Court of Indiana.

Dec. 13, 1999.

---

Kevin C.C. Wild, Patricia Caress McMath, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Defendant Alonzo Allen was convicted of murder and two counts of criminal deviate conduct for the death of Nikita Jackson. The trial court sentenced him to 165 years.

Allen presents four claims of error in this direct appeal:

1. That the trial court erred in admitting evidence of another crime for which Allen was charged and tried but not convicted;

2. That the prosecutor engaged in misconduct during his closing argument;

3. That there was a material variance between the information charging Allen and the proof presented at trial; and

4. That Allen's sentence is unreasonable.

## Factual Background and Procedural History

On October 19, 1995, an employee arriving for work found Nikita Jackson's body behind a business on the west side of Indianapolis. (R. at 1281–82, 1305.) She had been sexually assaulted and strangled to death. (R. at 1377, 1413, 1415.) The police found glue residue on her arms, legs, and from ear to ear, indicating that she had been bound with duct tape. (R. at 1317–18, 1381, 1387–88.) In her bedroom, the police found a note with Allen's pager number and the name "Play." (R. at 1312–13, 1349–51.)

During the investigation of Nikita Jackson's murder, the police arrested Allen for an attack on Melanie Franklin, charging criminal deviate conduct, rape, confinement, and robbery. (R. at 46, 557.) Franklin claimed that she met Allen at a restaurant, that he introduced himself to her as "Play," and that they exchanged pager numbers. (R. at 1680, 1682–83.) Franklin also claimed that when they met at Allen's house for a date, he threatened her with a box cutter, bound her hands with duct tape, threatened to bind her legs and mouth if she struggled, and raped her twice. (R. at 1691, 1698–1706, 1787–88.) Allen was charged for the Franklin incident and found not guilty of robbery and criminal deviate conduct; the jury hung on the rape and confinement charges. (R. at 557.)

The police concluded that the two crimes were similar; both Franklin and Jackson were bound with duct tape and sexually assaulted, both had Allen's pager number and knew him as "Play." Allen was charged with criminal deviate conduct upon and the murder of Jackson on July 5, 1996. (R. at 42–44.)

During the pretrial proceedings, the State filed a Notice of Intent to Offer Evidence Pursuant to Rule 404(b) (R. at 119–20), and an amended version, (R. at 193–94, 548). The purpose was to provide Allen with notice that, at the Jackson trial, the State intended to offer evidence of the Franklin rape and the attempted rape of Sylvia Mays that occurred on July 14, 1995 (before either the Jackson or the Franklin incidents).[1] After a hearing, the trial court ruled that evidence of both the Franklin and the Mays assaults could be admitted. (R. at 248–254.) The State later filed another notice under Rule 404(b), requesting that it be permitted to offer evidence of the rape of Cecelia Allen, Alonzo Allen's wife.[2] (R. at 384, 1147.) The

---

1. On July 14, 1995, the police filed a report which recounted Sylvia Mays' allegation that Allen took her to his house that day and told her he wanted to have sex with her. (R. at 203.) When she resisted, he bound her wrists and ankles with duct tape. (*Id.*) Once he

discovered she was menstruating, he instead rubbed his penis against her buttocks. (*Id.*) The State tried Allen for sexual battery, and he was found not guilty. (R. at 250.)

2. Cecelia Allen testified in a pretrial hearing that in late summer or early fall of 1994, Allen

trial court excluded evidence of the Cecelia Allen attack. (R. at 1189.) Sylvia Mays did not testify, but the evidence of the Franklin rape was admitted at trial.

## I. Evidence of Previous Behavior

■ Indiana Rule of Evidence 404(b) provides that evidence of other misconduct may not be admitted to prove that the defendant acted in conformity with a certain character trait, such as sexual violence. The rule was "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities...." *Hicks v. State*, 690 N.E.2d 215, 218 (Ind.1997). On the other hand, evidence about other "bad acts" may be admissible for different purposes, such as proof of identity. Ind. Evidence Rule 404(b). The State asserts that the evidence of the Franklin rape (for which Allen was charged and tried but not convicted) is admissible to prove Allen's identity as the perpetrator in this case. (Appellee's Br. at 7.)

■ The identity exception in Rule 404(b) was crafted primarily for crimes so nearly identical that the modus operandi is virtually a "signature." *Thompson v. State*, 690 N.E.2d 224, 234 (Ind.1997). "The exception's rationale is that the crimes, or means used to commit them, were so similar and unique that it is highly probable that the same person committed all of them." *Id.* The analysis of admissibility under Rule 404(b) incorporates the relevancy test of Rule 401 and the balancing test of Rule 403. *Hicks*, 690 N.E.2d at 221. First, "the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and [second,] the court must balance the probative value of

the evidence against its prejudicial effect pursuant to Rule 403." *Id.*

The trial judge considered at some length whether the Franklin evidence was relevant to identity or merely offered to demonstrate propensity.[3] He examined with some care the similarities in the two crimes that might make one a signature for the other.

Both victims were African–American teenage girls. (R. at 252.) The crimes both occurred in the same neighborhood, within two months of each other. (R. at 252, 1281–82, 1305, 1691–1706.) Melanie Franklin said she knew Allen as "Play," (R. at 1682–83); the police found in Nikita Jackson's room in her home a scrap of paper upon which Allen's pager number and the name "Play" were written, (R. at 1312–13, 1349–50). Both incidents involve some sort of anal probing or penetration. (R. at 1413, 1414, 1705.)

Finally, both victims were bound with duct tape. (R. at 252.) Jackson was taped at her wrists, ankles, and mouth, (R. at 1317, 1381, 1387); Franklin was taped at her wrists, but she said Allen threatened to tape her ankles and mouth. In both cases the duct tape was removed after the attack. (R. at 1702, 1771, 1787–88.) Allen's Exhibit A to his Brief in Opposition [to] 404(b) Evidence is a list of the cases handled by the Indianapolis Police Department from late 1994 to March 1997 involving the use of duct tape. (R. at 241–42, 560–61.) Examining all of the crimes reported to the Indianapolis Police over the course of two and one-half years, the exhibit catalogs only forty-two incidents in which the perpetrators used duct tape to bind the victims. Moreover, only eight of the forty-two were rapes or sexual attacks. (R. at 241–42.) Allen's own exhibit sug-

---

bound her with a tee shirt and duct tape and raped her. (R. at 1155, 1157–60.)

**3.** Such evidence would be irrelevant if Allen's identity were not at issue. In this case, however, the victim was killed, and was therefore unable to identify her attacker. In addition,

Allen asserted an alibi defense, (R. at 178), thereby affirmatively claiming that he was not the attacker. His identity as the assailant was, therefore, at issue. *See, e.g., Brim v. State*, 624 N.E.2d 27, 34–35 (Ind.Ct.App. 1993), *trans. denied.*

gests that sexual assault cases involving duct tape binding are relatively rare.

■ Whether this evidence was offered to prove identity or propensity was a close call. We are hard-pressed to say the trial judge erred on this point. As for the second part of the admissibility decision, relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. Evid. R. 403. "We review this balancing act by the trial court under an abuse of discretion standard." *Hicks*, 690 N.E.2d at 223. The identity of Franklin's attacker was certainly a crucial issue at trial, and the Allen evidence was substantially probative of that issue.

Even where we might have reached a different conclusion had we tried the case, we reverse only when we are convinced the trial judge's call was an abuse of discretion. We are not.

■ In any event, were we persuaded it was an abuse, it would not have warranted reversal under the standard of Trial Rule 61. The sperm found on Nikita Jackson's shorts was submitted to the Marion County crime lab and a private lab for DNA testing. The private lab concluded, "if you went out and randomly tested individuals[,] you would expect to only find one person out of 37,900 that had that same characteristics as Alonzo Allen which were also the same characteristics that were found in the sperm fraction of the shorts." (R. at 1559.) Even taking into account the National Research Council's suggested margin of error on this type of analysis, the range of likelihood that Allen was the perpetrator is an impressive 1/3,800 to 1/380,000. (R. at 1568.) Moreover, while no statistical estimates were calculated on the likelihood that the sperm found in Jackson's mouth came from Allen's body, the private lab concluded that Allen could not be excluded as a contributor to that DNA. (R. at 1861.) This remarkable scientific evidence, taken with the other admissible evidence, leads us to conclude that the jury would have convicted Allen even without Melanie Franklin's testimony.

## II. Prosecutorial Misconduct

■ During closing argument, the prosecutor made remarks about the case using Biblical imagery. Allen contends these remarks constituted misconduct and warrant the reversal of his convictions. "To preserve an issue regarding the propriety of a closing argument for appeal, a defendant must do more than simply make a prompt objection to the argument. Defendant must also request an admonishment, and if further relief is desired, defendant must move for a mistrial." *Wright v. State*, 690 N.E.2d 1098, 1111 (Ind.1997) (citing *Zenthofer v. State*, 613 N.E.2d 31, 34 (Ind.1993)). Failure to request an admonition or mistrial results in waiver of the issue. *Zenthofer*, 613 N.E.2d at 34; *see also Stacker v. State*, 264 Ind. 692, 348 N.E.2d 648, 651 (Ind.1976) (because "Appellant's counsel ... did not seek ... an admonishment ... [,] the trial court's failure to [issue one] is not reviewable by this Court.").

While Allen objected to the prosecutor's remarks at trial, he failed to request an admonition. (*See* R. at 2098; *see also* Appellant's Reply Br. at 3 (stating that Allen objected to the closing argument, but making no reference to admonition).) This claim is waived.

## III. Material Variance

■ Allen claims that a material variance existed between the charging information and the proof at trial. (Appellant's Br. at 23.) Specifically, he argues that Count IV of the information charged Allen with criminal deviate conduct involving his sex organ while the proof at trial indicated that the perpetrator committed criminal deviate conduct involving a blunt object. (Appellant's Br. at 22.) Allen states that the crime at issue in Count IV

> has two alternative definitions. One [involves] the *sex organ* of one person and the anus of another. The other is penetration of the anus ... by an *object*.

The State charged the former in Count IV. The evidence showed the latter. This constituted a variance between the Information and the proof presented at trial, and the variance is not immaterial. (*Id.*) We agree.

 A variance is an essential difference between proof and pleading. *Mitchem v. State*, 685 N.E.2d 671, 677 (Ind. 1997). Not all variances are material or fatal, however. *Id.*

The test to determine whether a variance between the proof at trial and a charging information or indictment is fatal is as follows:

(1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;

(2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

*Id.* (citing *Harrison v. State*, 507 N.E.2d 565, 566 (Ind.1987) (citations omitted)). Allen claims error on both of the above grounds, arguing more strenuously about prong two, that, despite his conviction on Count IV, he remains subject to the likelihood of another prosecution for the same event, on the same facts and evidence.[4]

The Court of Appeals confronted a similar situation in *Miller v. State*, 616 N.E.2d 750 (Ind.Ct.App.1993), *cited with approval in Mitchem*, 685 N.E.2d at 677. In *Miller*, the State charged the defendant with confinement "while armed with a deadly weapon, namely a handgun." *Miller*, 616 N.E.2d at 754. A handgun is defined by statute as a firearm. *Id.* The evidence at trial showed, however, that the defendant used a pellet gun. *Id.* at 752. While a pellet gun may be described as a weapon "capable of causing serious bodily injury," within the broader category covered by the statute, it is not a firearm, the narrow-

er category covered by the statute. *Id.* at 755. The State specified the use of a handgun, thereby limiting the charge to the illegal use of a firearm. *Id.* Because the proof showed that the defendant used a weapon that was not a firearm, the *Miller* court held that there was a material variance. *Id.* at 756.

The same is true here. The State charged Allen with criminal deviate conduct involving his sex organ. (R. at 43.) The State's physician testified at trial that the "injury [was] an injury of forcible sexual assault caused by a forcible penetration into the anus [by] a blunt object." (R. at 1413.) While there was evidence that the injury resulted in such profuse bleeding that any sperm that may have been in Nikita Jackson's anus would have been washed away, (R. at 1414), and that the injury was "sexual in nature," (R. at 1413), the State failed to elicit any testimony that Allen's sex organ was the cause of the "extensive injury of the anus," (*Id.*). Because the State limited the charge to a sex organ, rather than employing the broader "object" language in the information, Allen could be recharged and tried again on the same facts and evidence, in fact, for the same event.

We have held that there is no variance, despite the fact that one weapon was alleged and another was proved to be used, if that weapon "was of a similar nature, and caused the same character of wound or injury." *Mitchem*, 685 N.E.2d at 677 (quoting *Madison v. State*, 234 Ind. 517, 551, 130 N.E.2d 35, 50 (1955) (Arterburn, J., concurring, joined by three other justices) (quoting *State v. Spahr*, 186 Ind. 589, 591–92, 117 N.E. 648, 649 (1917))). This statement of law arose with respect to cases involving surplusage in the information; it indicated a "'tendency to tolerate a greater variance between allegations and proof *where the allegations are not necessary.*'" *Madison*, 234 Ind. at 544, 130 N.E.2d at 47 (Arterburn, J., concurring)

___

4. We address this issue on the merits, as the State has not claimed that Allen waived it.

(quoting *McCallister v. State,* 217 Ind. 65, 71, 26 N.E.2d 391, 393 (1940)).

In *Madison,* the charge was more specific than was required by law. *Id.* (information stated hand grenade was loaded with nitroglycerine, proof indicated it was filled with T.N.T.; "An allegation that the hand grenade was loaded with 'a dangerous and high explosive' or like language would have sufficed in this case."). By contrast, there was no surplusage in the charging information in the present case; rather, the information set out the required elements of the offense. (*See* R. at 43 (stating the elements of the offense as provided by statute: "ALONZO R. ALLEN ... did knowingly cause ... NIKITA JACKSON[ ] to perform or submit to deviate sexual conduct, an act involving the sex organ of , ... ALLEN and the anus of ... JACKSON when ... JACKSON was compelled by force or the imminent threat of force, which resulted in serious bodily injury ..., that is: death.").)

The State argues briefly that the autopsy physician's testimony about penetration by a "blunt object" and the presence of semen on the victim's shorts constitute an inference consistent with the charge that Allen committed the offense with his sex organ. In effect, the Attorney General argues, "It's not like we were trying at trial to prove use of a club or some other inanimate object." This argument has some weight and leads us to consider whether Allen's variance claim really warrants reversal or could fairly be called a technicality.

In defining the crime charged in Count IV, our Code distinguishes between penetration by a "sex organ" and penetration by an "object." Here, the State charged the former. It may well be that one of its witnesses could have stated that the penetration was by a "sex organ," but no one did. From the defendant's point of view, the difference is between a sentence of 115 years, which we affirm today, and a sentence of 165 years. For this fifty-year difference, we conclude the State should provide evidence that plainly matches the charge.[5]

We therefore reverse Allen's conviction on Count IV and remand that count for a new trial.

## IV. Review of the Sentence

Allen presents three claims of sentencing error: (1) the presentence investigation report was biased; (2) the trial court improperly considered the evidence of his crime against Franklin as an aggravating circumstance; and (3) his aggregate sentence is manifestly unreasonable. (Appellant's Br. at 25, 27, 28.)

■ First, Allen claims the presentence report was biased because "[i]t is focused on details of crimes for which he was convicted, ... acquitted, and ... merely suspected," (Appellant's Br. at 26), and because "the probation officer completely ignored mitigating factors apparent from ... Allen's family and social history," (*Id.* at 27). The probation officer who prepares the presentence investigation report is given wide discretion to include any matters he or she deems relevant to a determination of a sentence. *Dillon v. State,* 492 N.E.2d 661, 664 (Ind.1986) (citing *Lang v. State,* 461 N.E.2d 1110, 1115 (Ind.1984)). The presentence report should include the defendant's criminal history. *Misenheimer v. State,* 268 Ind. 274, 289, 374 N.E.2d 523, 532 (1978); Ind. Code Ann. § 35–38–1–9(b)(2) (West 1998). We have held that " '[c]riminal history' would seem to include charges which were dropped or resulted in an acquittal." *Misenheimer,* 268 Ind. at 289–90, 374 N.E.2d

---

5. Other variance claims leading to error include: *Kirk v. State,* 250 Ind. 307, 235 N.E.2d 684 (1968); *Ferrell v. State,* 247 Ind. 535, 219 N.E.2d 804 (1966); *Tullis v. State,* 230 Ind. 311, 103 N.E.2d 353 (1952); *Miller,* 616 N.E.2d 750; *Waye v. State,* 181 Ind.App. 66, 390 N.E.2d 700 (1979); *Wilson v. State,* 164 Ind.App. 665, 330 N.E.2d 356 (1975); *Bailey v. State,* 161 Ind.App. 91, 314 N.E.2d 755 (1974); *Hochman v. State,* 157 Ind.App. 419, 300 N.E.2d 373 (1973) (all reversing convictions on the basis of material variance).

at 532. It was not error to include the whole history of Allen's encounters with the criminal justice system. What parts of that history a sentencing judge might properly find as aggravating or mitigating circumstances is a different question.

■ We also conclude that the probation officer adequately addressed Allen's social and family background. The report examines Allen's employment history, religious affiliation, health, and roles as father and (separated) husband. (R. at 486, 488, 493–95.) While the officer did not find that those factors amounted to what he considered to be mitigating circumstances, (R. at 497), the information Allen claims the officer "completely ignored" was available to the court when it made its own, independent, sentencing determination. The presentencing investigation report was properly prepared. We see no error here.

Second, Allen claims that the trial court improperly relied on evidence of the Franklin rape as an aggravating circumstance. (Appellant's Br. at 27.)[6] This contention rests solely on his earlier claim that evidence of the Franklin rape was inadmissible under Rule 404(b), which we have resolved adverse to Allen.

■ Third, Allen claims that his sentence is manifestly unreasonable. (Appellant's Br. at 25.) "This claim requires us to reexamine all valid aggravating and mitigating circumstances to consider whether the sentence imposed was 'manifestly unreasonable in light of the nature of the offense and the character of the offender.'" *Carter v. State*, 711 N.E.2d 835, 841 (Ind.1999) (citing Ind. Appellate Rule 17(B)).

■ We review sentences with the knowledge that reasonable minds may differ as to what sentence is appropriate in any given case. *Id.* (citing *Fointno v. State*, 487 N.E.2d 140, 149 (Ind.1986)).

"'Given the degree of subjectivity that cannot be eliminated in the sentencing process, it would be inappropriate for us merely to substitute our opinions for those of the trial judge.'" *Id.* (quoting *Fointno*, 487 N.E.2d at 149). We therefore generally defer to a trial court's sentencing determination.

In sentencing Allen, the trial court found multiple aggravating circumstances:

(1) Allen has a prior criminal history (a battery conviction and dealing in a sawed-off shotgun).

(2) Allen has not responded to prior attempts at rehabilitation.

(3) The State presented credible evidence that Allen raped Melanie Franklin.

(4) The facts of this case are particularly heinous: Allen violently strangled to death a 17–year–old girl, who was adored by her family.

 (a) Allen committed sexual assault prior to killing Nikita Jackson, which resulted in serious injury to her (bleeding from her anus).

 (b) Allen bound Jackson.

 (c) Allen strangled Jackson so forcefully that he crushed her trachea.

 (d) Allen dumped Jackson's body "like rubbish behind a business . . . in Indianapolis, Indiana."

(R. at 2133–35.)

■ While the court found no mitigating factors, (R. at 2135), "[t]he finding of mitigating factors is not mandatory and rests within the discretion of the trial court." *Hurt v. State*, 657 N.E.2d 112, 115 (Ind.1995) (citing *Wingett v. State*, 640 N.E.2d 372, 373 (Ind.1994)). "Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was improperly overlooked." *Legue v. State*, 688 N.E.2d 408, 411 (Ind.1997) (cit-

---

6. The trial court stated at the sentencing hearing, "there has been credible evidence that the Defendant committed a rape upon one Melanie Franklin, who testified in connection with this case, and that is considered as to the Defendant's character." (R. at 2134.)

ing *Jones v. State,* 467 N.E.2d 681, 683 (Ind.1984)). We find no mitigating circumstance compelled by this record.

■ A single aggravating circumstance may be sufficient to support both the enhancement of a presumptive sentence and the imposition of consecutive sentences. *Isaacs v. State,* 673 N.E.2d 757, 765 (Ind. 1996). The court here found several. The sentence imposed represents a valid exercise of trial court discretion.

### Conclusion

We reverse Allen's conviction on Count IV on the basis that there was a material variance between the charging information and the proof presented at trial and remand for a new trial on Count IV. We affirm Allen's other convictions and his new aggregate sentence of 115 years.

SULLIVAN, and RUCKER, JJ., concur.

DICKSON, J., concurs and dissents with separate opinion, with which BOEHM, J., concurs.

BOEHM, J., concurs and dissents with separate opinion, with which DICKSON, J., concurs in part.

DICKSON, Justice, concurring and dissenting.

I dissent from Part III (the issue of material variance) of the majority opinion and would not reverse Allen's conviction and sentence for criminal deviate conduct. At trial, the State did not assert anal penetration by any "blunt object" other than the defendant's "sex organ." The defendant was not charged with one criminal act and confronted at trial with evidence of a different act. He was not misled. I agree with Justice Boehm on this issue.

BOEHM, J., concurs.

BOEHM, Justice, concurring and dissenting.

I would conclude that the evidence of the prior rape was sufficiently shaky as a "signature" crime that it should not have been admitted in view of the obvious and substantial prejudice that a prior rape charge would generate. I agree with the majority that the error was harmless in view of the DNA evidence.

I disagree that testimony of anal penetration by a "blunt object" varied sufficiently from the charged penetration with a "sex organ" that the jury could not convict for the charged crime in Count IV. The jury was properly instructed on the elements of criminal deviate conduct and also instructed to rely on the common sense that it had gained from day-to-day living. It heard evidence that semen was found in the victim's shorts. In my view, this was sufficient to support the inference that a penis was the blunt object. Accordingly, I dissent from the reversal of Allen's conviction on Count IV, and concur in affirming the convictions on the other counts.

DICKSON, J., concurs in part.