**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Aug 19 2013, 5:39 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**PAUL MATTHEW BLANTON**
**JEFFREY K. BRANSTETTER**
Blanton Branstetter & Pierce, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MARK A. COOK,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　Appellant-Defendant,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　vs.　　　　　　　　　　　　　)　　　No. 88A01-1210-CR-468
　　　　　　　　　　　　　　　　　　　　)
STATE OF INDIANA,　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　)
　　　Appellee-Plaintiff.　　　　　　　　)

APPEAL FROM THE WASHINGTON CIRCUIT COURT
The Honorable Larry W. Medlock, Judge
Cause No.  88C01-0910-FC-508

**August 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

In 2012, Mark A. Cook was convicted of molesting his girlfriend's teenage daughter. On appeal, he argues that he was denied due process, the trial court erred by allowing improper vouching testimony, and there was a material variance in the evidence at trial. Cook did not raise any of these claims at trial, and thus he is held to the rigorous fundamental-error standard. Because Cook fails to establish that any fundamental error occurred, we affirm.

## Facts and Procedural History

Cook began dating A.F. in 2000. A.F. has four daughters, including J.F. Sometime after Cook moved in with A.F. and her daughters (J.F. was four years old at the time), he began "rub[bing] [J.F.] to sleep," by massaging her body, including her stomach, arms, legs, and back. Vol. II Tr. p. 97, Vol. III Tr. p. 91-92. Cook's relationship with A.F. continued, and over time, Cook became a sort of father figure to J.F. Vol. II Tr. p. 96.

One summer day in 2009, when J.F. was thirteen years old, she awoke to find Cook's hand on her vagina. Vol. II Tr. p. 100-01. J.F. pretended to be asleep, and Cook climbed on top of her and tried to penetrate her vagina with his penis. When Cook could not penetrate her, he left the room. On at least two other occasions that summer, Cook tried to penetrate J.F.'s vagina with his penis while she slept. On another occasion, Cook entered J.F.'s room while she was sleeping and put his tongue in her vagina. After every encounter, Cook told J.F. that he loved her. Vol. II Tr. p. 105.

J.F. confided in a friend about the molestation, and her friend told her stepmother, who contacted police. In October 2009, Cook was charged with Count I, child molesting as a Class C felony. An initial hearing was held on the child-molesting charge two months later. Cook was represented by a private attorney at the initial hearing. In July 2011, the State moved to amend the dates alleged in Count I and to add Count II, attempted child molesting as a Class A felony. Appellant's App. p. 264-69. Cook did not respond to the State's motion, and on August 8, the trial court granted the State's requests.

At the end of August, Cook's attorney filed a motion to withdraw, citing the recently added Class A felony charge and the time and resources needed to defend Cook against that charge. The attorney told the court that he had discussed the new charge with Cook. *See* Supp. Tr. p. 2-3. The trial court granted counsel's motion to withdraw. The trial court appointed a public defender for Cook in October 2011, after allowing Cook two months to try to find a new attorney on his own. In May 2012, the State again moved to amend the charging information. This time, the State sought to specify the substantial step alleged in furtherance of the attempted child molestation charged in Count II; specifically, that Cook exposed his penis to J.F. *Id.* at 229. The trial court granted the State's motion over Cook's objection.

Cook's two-day jury trial began in June 2012. At trial, J.F. testified that in a number of encounters, Cook had touched her vagina, placed his tongue in her vagina, and attempted to penetrate her vagina with his penis. Vol. II Tr. p. 100-05. Detective Brent Miller, the lead investigator in the case, also testified. During the detective's testimony,

3

the State played the audio recording of his interview with Cook. In the interview, Detective Miller asked Cook if he thought J.F. was an honest person. Vol. II Tr. p. 249, Vol. III Tr. p. 42. Cook said she was. *Id.* Detective Miller agreed, saying many times that J.F. was honest and had no reason to lie:

> [I] mean, I don't . . . know that she has any reason to lie about [being molested]. She's a smart student, she makes good grades. She's an honest person.

> \* \* \* \* \*

> [S]ome of the questions we've asked you, you helped corroborate her story. That she is telling the truth because of some of the things that you told us, that you didn't think amount[ed] to anything, but it corroborates her story.

> \* \* \* \* \*

> She seemed to be honest and very sincere to me.

Vol. III Tr. p. 18-19, 23, 42. Although Detective Miller made these statements, he also suggested that J.F. might have initiated the sexual contact and that J.F. perhaps fantasized about Cook being her boyfriend. *See* Vol. II Tr. p. 229, Vol. III Tr. p. 7, 10-11, 15-16, 24, 30-36, 43-45. At trial, Detective Miller explained that this was an interview technique in which he purposely "tr[ied] to minimize the crime" in order to encourage a suspect to "open up and talk to" him. Vol. II Tr. p. 228-29. During the investigation and at trial, Cook admitted that he touched J.F.'s vagina on four occasions, but he claimed that J.F. put his hand there. Vol. III Tr. p. 58, 132-35, 141-42. Cook denied any other sexual contact with J.F. and implied that her testimony was incredibly dubious because someone in the house would have heard something if he had done what J.F. claimed. *See* Vol. III Tr. p. 93 (describing J.F.'s bed as "squeaky), 97 (saying A.F. is a light sleeper).

4

The jury found Cook guilty as charged and the trial court sentenced him to six years on Count I and forty years—with seven and a half years suspended—on Count II, to be served concurrently. Cook now appeals.

## Discussion and Decision

On appeal, Cook argues that he was denied due process, the trial court erred by allowing improper vouching testimony, and the evidence at trial materially varied from the allegations in Count II.

### I. Due Process

#### A. *Initial hearing*

Cook contends he was denied due process because he was not provided an initial hearing on Count II when it was added. But Cook never objected to the amended charges, nor did he argue that an initial hearing on the amended charges was required before trial could occur. For this reason, we find no error. *See Costello v. State*, 643 N.E.2d 421, 422 (Ind. Ct. App. 1994) ("The failure of the record to show either an arraignment or plea, or both, will not invalidate a conviction unless the record shows the defendant objected, before the trial commenced, to the lack of arraignment or plea.").

Cook also argues that he did not have notice of Count II. But the record shows otherwise. Notice of the amended charge was sent to Cook's first attorney, which constitutes notice to Cook. *See* Ind. Trial Rule 5; Ind. Criminal Rule 18. And Count II was added ten months before Cook's trial. This gave Cook's first attorney time to discuss the amended charge with Cook. Before withdrawing from the case, Cook's first attorney sent Cook a letter explaining the amended charge and met with Cook to discuss

5

the amended charges. Count II was also discussed at the hearing in October 2011, when the trial court appointed a public defender to represent Cook. Vol. I Tr. p. 9. And when Cook's second attorney took over, he waived a hearing on the later amendment to Count II. Vol. I Tr. p. 13. For these reasons, we conclude that Cook was not denied due process as to Count II.[1]

### B. Critical Stage

Cook also argues that he was not represented by counsel at every critical stage of the proceedings. The Sixth Amendment to the United States Constitution requires the assistance of counsel at all critical stages of the prosecution. *See Hernandez v. State*, 761 N.E.2d 845, 849 (Ind. 2002). The denial of this constitutional right is subject to a harmless-error analysis "unless the deprivation, by its very nature, cannot be harmless." *Id.* (citation omitted).

After his first attorney withdrew, Cook was unrepresented for a ten-week period from August to October 2011. Cook's argument seems to be that this ten-week window was a critical stage because three alleged errors occurred just before or during this time period: the State was permitted to add Count II, his first attorney withdrew without complying with statutory requirements, and his right to a speedy trial was violated. Cook did not object on any of these grounds at trial, and he does not ask this Court to grant him

---

[1] Cook also suggests that there were due-process violations in the initial hearing on Count I, at which time he was represented by his first attorney. Cook never raised this issue at the trial level. Nor is it a persuasive appellate argument. Cook claims that he was not properly advised regarding his right to court-appointed counsel, the function of a preliminary plea, and the nature of the charges against him. But in order to warrant reversal, a defendant must show that the failure of the trial court to advise him of his rights at the initial hearing caused him harm. *Bochner v. State*, 715 N.E.2d 416, 418 (Ind. Ct. App. 1999) (citing *Fox v. State*, 506 N.E.2d 1090, 1096 (Ind. 1987), *trans. denied*). Cook has not proven that any of these alleged advisement failures caused him harm.

independent relief on any of these bases. Instead, he claims that these alleged errors prove that the ten-week period during which he had no attorney was a critical stage.

Assuming without deciding that this was a critical stage, any error in Cook's deprivation of counsel was harmless. Cook's second attorney represented him for seven months before his trial. During this time, the attorney could have challenged any error in the addition of Count II via a motion to dismiss, which Cook himself acknowledges. *See* Appellant's Reply Br. p. 8. As for Cook's speedy-trial argument, his second attorney could have filed a motion for discharge pursuant to Criminal Rule 4(C). Although Cook argues that these motions would have been filed later if filed by his second attorney, rather than his first, Cook was still capable of pursuing these claims. To the extent Cook's first attorney's withdrawal may have been improper, Cook did not object to the withdrawal. And when Cook was unable to retain a new attorney on his own, the trial court appointed an attorney who represented Cook before and during his trial, and he was was capable of addressing any claims of error Cook sets forth above. For these reasons, Cook has failed to show he was denied due process.

## II. Vouching Testimony

Cook next claims that the trial court erred by admitting vouching testimony. Vouching testimony is generally prohibited under Indiana Evidence Rule 704(b), which states: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." This testimony is considered an "invasion of the province of the jurors in determining what weight they should place upon a witness's testimony."

7

*Kindred v. State*, 973 N.E.2d 1245, 1257 (Ind. Ct. App. 2012) (quoting *Gutierrez v. State*, 961 N.E.2d 1030, 1034 (Ind. Ct. App. 2012)), *trans. denied*. "Until recently, an exception was made to Evidence Rule 704(b) for vouching testimony in child-molesting cases[,]" but, in *Hoglund v. State*, 962 N.E.2d 1230 (Ind. 2012), our Supreme Court eliminated the "vouching testimony exception in the context of child-molesting cases." *Palilonis v. State*, 970 N.E.2d 713, 729 (Ind. Ct. App. 2012), *trans. denied*.

Cook admits that he did not object to the admission of the evidence he now challenges on appeal. Thus, his vouching claim is waived unless he can show that fundamental error occurred. *Kimbrough v. State*, 911 N.E.2d 621, 634 (Ind. Ct. App. 2009). The fundamental-error rule is extremely narrow. *Id.* Fundamental error occurs only when the error "constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.*

Cook challenges statements made by Detective Miller in his pretrial interview with Cook, which was played for jurors. During the interview, Detective Miller repeatedly stated that J.F. was honest and had no reason to lie. This is impermissible vouching testimony. *See Kindred*, 973 N.E.2d at 1258 (witnesses vouched for child's credibility when they stated that the child was truthful, believable, and would not lie).[2]

---

[2] Cook also argues that his case is analogous to *Kindred*, where this Court reversed a child-molesting conviction. But in *Kindred*, we found that the *cumulative* effect of the admission of vouching testimony from two witnesses and hearsay testimony from five witnesses—as well as other evidence—was fundamental error. 973 N.E.2d at 1258-59. The extent of the improper evidence in that case, combined with the unique facts of the case, led to the conclusion that fundamental error had occurred. Cook's reliance on *Kindred* is not persuasive.

But it does not rise to the level of fundamental error. Although Detective Miller vouched for J.F.'s credibility, the harm posed by the detective's vouching testimony decreased significantly when the detective also impugned J.F.'s credibility by suggesting that she might have instigated the sexual contact with Cook and might have fantasized about Cook being her boyfriend. Because the challenged testimony did not create a substantial harm or make a fair trial impossible for Cook, we cannot say that fundamental error occurred.

### III. Material Variance

Finally, Cook alleges a fatal variance between the charging information on Count II, Class A felony attempted child molesting, and the proof at trial. "A variance is an essential difference between proof and pleading." *Allen v. State*, 720 N.E.2d 707, 713 (Ind. 1999) (citing *Mitchem v. State*, 685 N.E.2d 671, 677 (Ind. 1997)). A variance does not necessarily require reversal, however. *Broude v. State*, 956 N.E.2d 130, 135 (Ind. Ct. App. 2011) (citing *Mitchem*, 685 N.E.2d at 677), *trans. denied*. The test to determine whether a variance is fatal is:

> (1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;

> (2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

*Id.* (citing *Allen*, 720 N.E.2d at 713). "Put another way, if the variance either misleads the defendant in the preparation of his defense resulting in prejudice or leaves the defendant vulnerable to double jeopardy in a future criminal proceeding covering the

9

same event and evidence, then the variance is fatal." *Id.* (citing *Winn v. State*, 748 N.E.2d 352 (Ind. 2001)).

Cook acknowledges that he failed to make a variance objection at trial. Absent fundamental error, Cook's failure to lodge an objection at trial waived any material-variance issue. *Bayes v. State*, 779 N.E.2d 77, 88 (Ind. Ct. App. 2002) (citation omitted), *trans. denied*. Waiver aside, we fail to see the variance that Cook alleges. The amended information for Count II reads:

> Mark A. Cook, a person at least twenty-one (21) years of age, did then and there knowingly or intentionally, with a child less than fourteen (14) years of age, to wit: J.F., attempt to perform sexual intercourse or deviate sexual conduct, and engaged in conduct that constituted a substantial step in furtherance of that crime, to wit: exposing his penis . . . .

Appellant's App. p. 228. At trial, the State proved that substantial step through J.F.'s testimony. Although J.F. never expressly stated that Cook exposed his penis to her, she testified that he tried to force his penis into her vagina on at least three occasions. The reasonable inference from J.F.'s testimony is that Cook exposed his penis when he tried to put it in her vagina. Thus, there was no "essential difference between proof and pleading"; rather, the State's evidence showed that Cook's actions went *beyond* mere exposure. We do not agree with Cook that this amounted to a variance.

Even if a variance existed, it would not be fatal. Cook's defense at trial was that he only touched J.F.'s vagina because she took his hand and put it there. He denied any other sexual contact with J.F., implying that her testimony was incredibly dubious because someone in the house would have heard something if he had attempted to penetrate J.F.'s vagina with his penis. Therefore, there is no reason to believe that

10

Cook's defense would have changed had the charging information alleged that he had attempted to molest J.F. by going beyond mere exposure and attempting to penetrate her vagina with his exposed penis. For this reason, we cannot say that Cook was prejudiced in the preparation of his defense. *See Broude*, 956 N.E.2d at 136 (No preparation-of-defense issue where "defense would have been the same no matter what the factual nature of the child molesting allegations had been.")

Nor did any alleged variance leave Cook vulnerable to double jeopardy in a later criminal proceeding. The State alleged that Cook took a substantial step toward committing child molesting by exposing his penis to J.F., and the State identified a specific date range during which these acts were alleged to have occurred. At trial, J.F. testified about specific instances in that date range when Cook tried to penetrate her with his penis and touched her vagina with his hands and tongue. Double-jeopardy principles would preclude another trial and conviction based on the same evidence and facts presented in Cook's first trial.[3]

Affirmed.

KIRSCH, J., and PYLE, J., concur.

---

[3] We need not reach Cook's sufficiency argument as it is premised on his material-variance claim.