# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 08 2018, 6:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Victoria L. Bailey
Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mykel Smith, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 8, 2018 <br><br> Court of Appeals Case No. 18A-CR-637 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marc T. Rothenberg, Judge <br><br> Trial Court Cause No. 49G02-1510-F2-37383 |

**Barteau, Senior Judge.**

# Statement of the Case

After a jury trial, Mykel Smith appeals his convictions of one count of burglary, a Level 2 felony,[1] one count of resisting law enforcement, a Level 6 felony,[2] and one count of carrying a handgun without a license, a Class A Misdemeanor,[3] contending there is insufficient evidence to support each of his convictions. We affirm.

# Issues

Smith presents the following issues for our review:

I.   Should Smith's burglary conviction be reversed because a material variance existed between the crime alleged in the charging information and the evidence adduced at trial and no handgun was found by law enforcement?

II.  Should Smith's conviction of resisting law enforcement be reversed because he was a passenger in the vehicle fleeing from law enforcement?

III. Should Smith's conviction of carrying a handgun without a license be reversed because no handgun was found on his person, in the car, or along the route between the

---

[1] Ind. Code § 35-43-2-1(3)(A) (2014).

[2] Ind. Code § 35-44.1-3-1(b)(1)(A) (2014).

[3] Ind. Code § 35-47-2-1 (2014).

victim's house and the location where he was apprehended?

# Facts and Procedural History

[3] On October 17, 2015, Joshua Helton left his home around 11:00 a.m. to fix a flat tire on his truck and then go to work. While he was gone, Helton's neighbors, Melinda Nash, and her daughter, Kahlel Nash, saw a blue Buick drive past Helton's house, reverse back to Helton's house and back into his driveway. A female, later identified as Lovey Shaw, exited the driver's side of the Buick, approached Helton's house and knocked on the front door for several minutes. Shaw then approached a side door of the house near the driveway and knocked several times. Shaw returned to the front of the house and peered in a window on the side of the house near the driveway. She returned to the car and spoke with Smith, who was seated in the passenger seat. He pulled a hoodie over his head. Kahlel called the police to report the suspicious activity because they had never seen those people at Helton's house before and the Nashes knew the only person who visited Helton was his mother.

[4] Shaw climbed into the back seat of the car and retrieved what appeared to be a crowbar. Shaw and Smith then proceeded to the rear of Helton's house. Next, Shaw exited the house carrying a laptop that she placed in the back seat of the car. She then re-entered the house. After exiting the house again, she placed additional items in her car.

[5]     Meanwhile, Helton had finished fixing the flat tire on his truck and began driving to work. His route to work took him past his house and on that day he observed the blue Buick in his driveway. After Helton exited his truck, neighbors shouted that a male and a female were breaking into his house. Helton first approached Shaw, who had jumped back into the driver's seat of the car as Helton arrived home. He knocked on the car window and asked her what she was doing, but she did not respond. Instead, she sped out of the driveway, honked the car horn, and headed down the street.

[6]     After Shaw left, Helton proceeded toward his house. Neighbors continued to yell, warning Helton that Smith remained inside the house. When Helton got to the back of his house, he saw that the back door, which he had previously closed and locked, was open. He entered his house and saw Smith standing there with items in his hands, including Helton's PlayStation. After Helton asked Smith what he was doing in the house, Smith dropped the items that were in his hands and reached for a small black handgun that was in his waistband.

[7]     When Smith raised the gun and pointed it in Helton's general direction, Helton turned and ran out of the back of the house. Smith yelled for Helton to return. Instead, Helton continued to run behind a tree, then behind a garage, and then jumped a fence to get into the neighbor's yard.

[8]     Melinda was standing in the middle of the street trying to locate Helton, who had been out of sight for around five to ten minutes. Another neighbor, Dave

Palmer, had joined her. They observed Smith running out of the house and carrying several items in his hands. He dropped some of the items as he ran away from the house, but his hoodie remained full of other items.

[9] As Smith was running, he extended his arm behind him and started shooting. At certain times he would stop running so he could shoot. Palmer, who had his gun with him, fired a shot at the ground attempting to scare Smith so he would stop shooting.

[10] Helton heard the gunshots and ran to the front of the house as he tried to call 911. Four police vehicles were already coming down the street in response to the report of a burglary in progress with shots being fired. Because it was an emergency run, officers were using their lights and sirens on their vehicles.

[11] One of the responding officers, Indianapolis Metropolitan Police Officer Paul Humphrey, observed the blue Buick with Smith seated on the passenger side wearing his hoodie up. The officer attempted to stop the Buick and observed items being thrown out of the vehicle from the passenger side. Because the vehicle did not stop, Officer Humphrey and several other officers continued to pursue the vehicle down numerous streets.

[12] A pursuit intervention technique, or PIT, vehicle was called to assist in the pursuit because the chase was nearing streets with more vehicle congestion. The PIT vehicle executed a maneuver causing the Buick to spin, swerve back and forth, go off the road through two different yards, and strike a vehicle waiting to turn while in an intersection. The Buick was not immobilized, and

Shaw and Smith continued to flee. After a second PIT maneuver was executed, the Buick was forced to a stop in a drainage ditch.

[13] As soon as the Buick came to rest in the ditch, the officers gave commands for Shaw and Smith to roll down the windows, unlock the doors, and open them. Neither person responded to the officers' commands, conversing with each other instead. Officer Humphrey used his baton to break out a window, and the officers pulled Smith and Shaw from the car. Smith had a holster for a handgun tucked into his waistband, but he did not have a license to carry a handgun. Officers searched the Buick and the route taken during the pursuit but were unable to locate a handgun.

[14] In Helton's house, his PlayStation and associated cords, a controller, some games, a charging port for the PlayStation controllers, and his bedroom television remote had been moved and were found on his dining room table. In his bedroom, a space heater had been moved and placed on his bed. Other items, including a WiiU and a controller, had been removed from a drawer where they were normally kept and had been placed on the bed. Helton's laptop computer, tablet, and a PlayStation controller were found along the route the vehicle drove during the pursuit.

[15] As for the value of the items Smith and Shaw took or attempted to take, Helton testified that he paid $299.00 or $399.00 for the PlayStation, $250.00 or $350.00 for the laptop computer, $100.00 for the tablet, $60.00 for each PlayStation controller, $60.00 for the games, and $19.99 for the charging port.

[16] The State charged Smith with Level 2 felony burglary with a deadly weapon, Level 6 felony theft, Level 6 felony criminal recklessness committed with a deadly weapon, Level 6 felony resisting law enforcement, and Class A misdemeanor carrying a handgun without a license. Smith and Shaw were tried in a joint jury trial. At the conclusion of the State's case, the trial court granted a directed verdict as to the Level 6 felony theft charge. The jury found Smith guilty of Level 2 felony burglary, Level 6 felony resisting law enforcement, and Class A misdemeanor carrying a handgun without a license. The jury acquitted Smith of the count alleging Level 6 felony criminal recklessness.

[17] The trial court sentenced Smith to concurrent sentences of fourteen years for the Level 2 felony conviction, two years for the Level 6 felony conviction, and one year for the Class A misdemeanor conviction. Smith now appeals.

# Discussion and Decision

## Standard of Review

[18] Smith alleges that there is insufficient evidence to support each of his convictions. When reviewing such claims, appellate courts consider only the probative evidence and reasonable inferences supporting the verdict. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016). Assessment of witness credibility and assignment of weight to the evidence to determine whether the evidence is sufficient to support a conviction is the fact-finder's role, not that of appellate courts. *Id.* It is unnecessary that the evidence "'overcome every reasonable

hypothesis of innocence.'" *Id.* (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)). The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Sallee,* 51 N.E.3d at 133.

## I. Material Variance and Lack of Physical Evidence

First, Smith alleges that his burglary conviction should be reversed because he claims there was a material and fatal variance between the allegations in the charging information and the evidence produced at trial.

"A variance is an essential difference between proof and pleading." *Allen v. State*, 720 N.E.2d 707, 713 (Ind. 1999). Not all variances are material or fatal. *Id.* To determine whether a variance between the proof at trial and the allegations of a charging information or indictment is fatal requires a reviewing court to consider the following two grounds: "'(1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby; (2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?'" *Id.* (quoting *Mitchem v. State*, 685 N.E.2d 671, 677 (Ind. 1997) (citing *Harrison v. State*, 507 N.E.2d 565, 566 (Ind. 1987))). "We resolve a claim of fatal variance under our sufficiency standard because the defendant's essential argument is the evidence produced at trial so differed from the charging information that it was insufficient to convict him as charged." *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014).

[21] The burglary statute, cited in the charging information, requires the State to prove the following in pertinent part beyond a reasonable doubt:

> A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony. However, the offense is: (3) a Level 2 felony if it: (A) is committed while armed with a deadly weapon[.]

Ind. Code § 35-43-2-1(3)(A).

[22] The language of the charging information for burglary filed against Smith reads as follows:

> On or about October 17, 2015, Mykel Smith did break and enter the building or structure of Joshua Helton, to-wit: a residence located at 195 N. Routiers Avenue; with the intent to commit the felony of Theft, therein, to-wit: to knowingly exert unauthorized control over the property of Joshua Helton, to-wit: a laptop computer and/or an Ipad and/or an electronic tablet, with the intent to deprive Joshua Helton of any part of the use or value of the property, said property having a value of at least seven hundred fifty dollars and less than the value of fifty thousand dollars; while armed with a deadly weapon, to-wit: a handgun[.]

Appellant's App. Vol. II, pp. 35-36.

[23] On the morning of the second day of trial, the State moved to amend the charging information from "felony theft therein" to more closely track the language of the statute, "a felony or theft therein." Tr. Vol. II, p. 219. Smith's and Shaw's attorneys objected to the amendment and the trial court denied the request, observing as follows:

the charging information is a correct statement of the law. It is a felony or theft and it could be one or the other charged that way. It's–it's the felony of theft. And I understand the State and that they're going forward on the felony charge of theft.

I also note that they don't have to actually prove theft to prove this Burglary. Remember, it's the intent to commit the felony of theft. If someone had broken into a house with the idea that there would be a million dollars in gold bars in that house or any property in the house worth over $750.00 and they were going to steal it, that, in my opinion is enough to prove the intent to commit the felony of theft or a theft.

*Id.* at 230-31.

[24]    Indeed, under the statute, proof of burglary does not require proof of theft or of any other specific felony. *Jones v. State*, 519 N.E.2d 1233, 1235 (Ind. 1988). "Proof of the theft is mere evidence showing intent to commit theft; it is not required to plead or prove an element of burglary." *Id.* Additionally, there must be proof of a "specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent to commit a felony." *Freshwater v. State*, 853 N.E.2d 941, 944 (Ind. 2006). It is also worth noting that by statute misdemeanor theft does not require proof of a specific value of the property taken, whereas Level 6 felony theft requires proof that the value of the property is at least $750.00.[4] Here, the charges required the State to prove that Smith intended to commit the theft of property with a value of at

---

[4] Ind. Code § 35-43-4-2 (2014).

least $750.00. Neither the burglary statute nor the theft statute requires proof of the specific items taken or intended to be taken.

[25] The evidence favorable to the verdict established that after determining that the homeowner was not at home, Smith and Shaw broke into Helton's house. Shaw took a laptop computer from the house and placed it in her car. Helton returned home while Smith was still inside. Helton observed that Smith was holding several items, including Helton's PlayStation. Smith dropped several items as he reached for a gun. However, Smith was still carrying some items from the house when he fled. He dropped some of those items as he ran, and he threw some items out of the car window while being pursued by police officers.

[26] After Smith was apprehended by police officers, Helton's laptop computer, tablet, and a PlayStation controller were recovered along the path of the pursuit. Inside Helton's home, his PlayStation and cords, a controller, some video games, a charging port for the PlayStation controller, and a television remote had been removed from Helton's bedroom and were found on the dining room table. In Helton's bedroom, a WiiU and a controller had been removed from their usual place and were found on the bed. Helton paid $299.00 or $399.00 for the PlayStation, $250.00 or $350.00 for the laptop, $100.00 for the tablet, $60.00 for each PlayStation controller, $60.00 for the games, and $19.99 for the charging port.

[27]     In *Mitchem*, the Supreme Court examined whether the State was required to prove the use of specific weapons–a handgun and a shotgun–in the commission of three attempted murders. The charging information alleged the defendant committed the attempted murders by use of a handgun and a shotgun. The evidence at trial suggested that the defendant used a rifle. On appeal, the defendant challenged his convictions on those counts, arguing a fatal variance between the crime charged and the proof at trial. 685 N.E.2d 671.

[28]     The Supreme Court found that the instructional error–absence of language requiring a finding of every material allegation set forth in the charging information–had been sufficiently preserved. *Id.* at 675. Next, the Court observed that "the specific weapon used is not an element of Attempted Murder." *Id.* at 676. "The general rule of Indiana criminal procedure is that 'what is unnecessary to allege is automatically unnecessary to prove.'" *Id.* (quoting *Powell v. State,* 250 Ind. 663, 668, 237 N.E.2d 95, 98 (1968) (citing *Marks v. State*, 220 Ind. 9, 40 N.E.2d 108 (1942))). The Court went on to quote the following from Justice Arterburn's concurring opinion in which three other justices concurred:

> Unnecessary descriptive material in a charge is surplusage. It need not be established in the proof and if there is a variance in the evidence from such unnecessary particularity it does not vitiate the proceedings unless it is shown that the defendant has been misled or prejudiced thereby.

*Madison v. State*, 234 Ind. 517, 543-44, 130 N.E.2d 35, 47 (1955).

[29]     Here, evidence of the specific items set forth in the charging information is not necessary to prove the crimes alleged. Further, Smith did not object to the exhibits showing various items that had been removed from Helton's home, those items that were collected in preparation to be removed from the home, or Helton's testimony about the value of the various items. Instead, Smith argues that the State was limited to the items specifically listed in the charging information and argues that the State failed to establish that the value of the listed items taken or intended to be taken is at least $750.00. The range of the evidence presented establishes that the value of the items at issue exceeded $750.00. As such, Smith was not misled in preparing a defense, nor was his defense harmed or prejudiced. Based upon the foregoing, we disagree with his argument and find that the State sufficiently established the elements of burglary with the intent to commit theft of personal property with a value of at least $750.00.[5]

[30]     Smith's next sufficiency argument as to this conviction centers on the lack of physical evidence of the handgun. No handgun was recovered by police who searched for it after Smith and Shaw were apprehended. A burglary charge

---

[5] Smith also argues that the State's evidence of value of the property is insufficient because Helton did not identify an iPad and the charging information lists an iPad as personal property alleged to be taken. The charging information, however, lists an "iPad and/or tablet." Appellant's App. Vol. II, p. 35. Helton identified State's Exhibit 23, Exhibit Vol. p. 26; Tr. Vol. II pp. 178, 181, as his tablet and testified to its value. Tr. Vol. II p. 181.

rises to a Level 2 felony if it was committed while armed with a deadly weapon. *See* Ind. Code § 35-43-2-1(3)(A).

[31]     In *White v. State*, 455 N.E.2d 329 (Ind. 1983), our Supreme Court was presented with a similar argument. In that case, the charge of criminal deviate conduct rose to a Class A felony because it was alleged that the defendant committed the crime by using or threatening the use of deadly force or while armed with a deadly weapon. No handgun was recovered. Testimony at trial established that a witness saw the defendant stick a shiny, blunt object into the victim's side. The defendant told the witness that the encounter was a holdup and that the witness should get out of the car the three were riding in or he would blow apart the victim. The witness complied and while doing so heard what sounded like the hammer of a gun being pulled back. The victim testified that the defendant told her to comply with his demands or he would blow her away. The Supreme Court held there was sufficient evidence to support the defendant's conviction, even though there was no physical evidence of the gun, because the testimony of the witness and victim supported an inference that the defendant used a gun during the crime. *Id.* at 332.

[32]     Here, Helton testified that he watched as Smith pulled a black handgun from his waistband, raised the gun and pointed it at Helton. When Smith was apprehended he was wearing a holster tucked into his waistband. Kahlel testified that when Smith ran past her house, she saw that Smith had a black 9 mm handgun in his hand and relayed as much to the 911 operator. Melinda testified that Smith started shooting and extended his arm to shoot. Each

witness testified that they heard gunshots. There is sufficient evidence from which the jury could infer beyond a reasonable doubt that Smith was in possession of a handgun, and that inference supports his burglary conviction as charged.

## II. Resisting Law Enforcement

[33] Smith argues that his conviction for resisting law enforcement should be reversed because there is insufficient evidence that he committed the offense. More specifically, he argues that his conviction should be reversed because he was merely a passenger in the Buick driven by Shaw during the pursuit.

[34] To establish that Smith had committed the offense of Level 6 felony resisting law enforcement, the State had to prove beyond a reasonable doubt that Smith knowingly or intentionally fled from a law enforcement officer after the officer had, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop and the person used a vehicle to commit the offense. *See* Ind. Code § 35-44.1-3-1(b)(1)(A).

[35] The Supreme Court considered a similar argument made in *Jones v. State*, 536 N.E.2d 267 (Ind. 1989). In *Jones*, the police officers received a report that male suspects were breaking into cars at an apartment complex. John Jones, Terrance Jones, and co-defendants named Snow and Hewlett, had driven to the apartment complex in Hewlett's car to carry out the Joneses' suggestion to steal car radios from automobiles parked at the apartment complex. A responding

officer observed a car driven by someone matching the description given. After the officer stopped the vehicle, Hewlett jumped out of the car, and the officer ordered him to return to the vehicle. Both of the Joneses were in the back seat of the car with Snow seated in the front passenger seat. Snow stated that he was not going back to jail, placed the car in gear and pressed on the accelerator all while seated in the passenger seat. Hewlett took over the wheel when Snow began shooting at the pursuing officer. Both Snow and Terrance shot at the officer as they fled in Hewlett's car.

[36]    John appealed, arguing that there was insufficient evidence to support his conviction of resisting law enforcement because he had no control over the fleeing vehicle, and once the vehicle stopped, he did not try to escape.

[37]    The Supreme Court observed that the acts of one accomplice are imputed to all other accomplices when they act in concert in the furtherance of a crime. *Id.* at 270, 271. The evidence need not show that the accomplice personally participated in the commission of each element of the offense. *Id.* at 270. The Supreme Court held that the evidence was sufficient to support John's conviction of resisting law enforcement because the acts of the others could be imputed to him under the accomplice theory. *Id.* at 271. The Court noted that, in addition to that evidence, John had told Hewlett not to stop the fleeing vehicle. *Id.*

[38]    Here, there was no evidence that Smith told Shaw to stop the vehicle. However, the other evidence is sufficient to support his conviction. He was a

passenger in Shaw's vehicle when they stopped at Helton's house. Shaw approached the house and determined that no one was home. Shaw then spoke to Smith, retrieved a crowbar from her car and the two disappeared behind the house. Shaw then exited the house carrying a laptop computer which she placed in her car. She returned to the house and exited with additional items of Helton's property. The evidence clearly showed that Shaw and Smith were working together in the commission of the burglary.

[39] The burglary was interrupted when Helton arrived home. Shaw took off in the Buick, honking her car horn as she left. Smith remained inside the house, but then fled on foot after his confrontation with Helton. Smith then met up with Shaw who was waiting nearby in her car. Once Smith was inside the car, the two attempted to leave the area, but were spotted by Officer Humphrey. A pursuit followed during which Smith tossed items from the car out the passenger side window. After the vehicle was stopped in a ditch, Smith and Shaw remained inside the car talking with each other and ignoring orders by law enforcement officers to exit the vehicle. There is sufficient evidence from which the jury could reasonably infer that Smith was acting in concert with Shaw in resisting law enforcement. There is sufficient evidence to support Smith's conviction of resisting law enforcement.

## III. Carrying a Handgun Without A License

[40] Smith challenges the sufficiency of the evidence supporting his conviction for carrying a handgun without a license. Specifically, Smith argues that his conviction should not stand because no handgun was found on his person or in

Shaw's Buick. No handgun was found along the path used by Smith and Shaw to flee law enforcement.

[41] The State was required to prove beyond a reasonable doubt that Smith carried a handgun in any vehicle or on or about his person without being licensed to carry a handgun. *See* Ind. Code § 35-47-2-1. The evidence in support of Smith's conviction for this charge showed that three witnesses, Helton, Melinda, and Kahlel, saw Smith carrying a handgun and each heard gun shots. Helton observed a gun holster in Smith's waistband. When Smith was apprehended, a holster was found in Smith's waistband. Officer Humphrey conducted a routine identification check to verify the identity of the suspects. That check further revealed their driving records and that neither Smith nor Shaw had a license to carry a handgun. The evidence is sufficient to support Smith's conviction.

## Conclusion

[42] The evidence is sufficient to support each of Smith's convictions.

[43] Affirmed.

Crone, J., and Bradford, J., concur.